81 N.J. Super. 497 (1963)
196 A.2d 26
RUSSELL A. FITT, PLAINTIFF,
v.
SCHNEIDEWIND REALTY CORP., A NEW JERSEY CORPORATION, AND HOWARD B. SCHNEIDEWIND, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 9, 1963.
*500 Mr. Harold J. Brown appeared for plaintiff (Messrs. Joyce & Brown, attorneys).
Mr. Ernest F. Keer, Jr. appeared for defendants (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
GIULIANO, J.S.C.
This is an action for real estate brokerage commissions and interest allegedly due plaintiff Russell A. Fitt (Fitt) as a result of the efforts made by plaintiff and his employee, William H. Decker (Decker), toward the sale of certain property by the Oiljak Manufacturing Co. (Oiljak) to Schneidewind Realty Corp. (Schneidewind). The cause was tried before the court without a jury.
Plaintiff is now, and was during the transactions complained of, a licensed real estate broker. About the middle of December 1960 William Taylor (Taylor), representing defendants, contacted Decker. Taylor requested on behalf of Schneidewind that Decker ascertain whether certain property owned by Oiljak was for sale and what the asking price was.
Decker then contacted the secretary of Oiljak, explaining that he had an inquiry about the property. The evidence revealed that the secretary was authorized to deal with all brokers interested in handling the property. Also, that there was no exclusive agency agreement nor was there a multiple listing to sell the property. Decker secured the necessary information, *501 including the plans of the buildings located on the specific property about which Taylor had inquired, and the price of the property. It was also testified to by Lester Vannan, president of Oiljak, that there were dozens of agents working on the sale of the property.
The information concerning the property was immediately transmitted to Schneidewind. Subsequent to the transfer of the requested information and prior to September 25, 1961, Decker was in contact with Schneidewind through Taylor and Howard B. Schneidewind, an officer of Schneidewind Realty Corp., on several occasions, estimated by Decker to be six or eight times, concerning the Oiljak property. On September 25, 1961 Howard B. Schneidewind contacted Decker at his office to inquire whether the Oiljak property was still for sale, the price, and whether Oiljak would divide the property for sale.
The following day Decker went to Schneidewind's office where he spoke to Taylor. Taylor asked for the same information requested by Howard B. Schneidewind the previous day. Decker gave the information to Taylor as requested.
In early October 1961 Taylor contacted Vannan and requested an appointment to discuss the purchase of the Oiljak property. An appointment was made and negotiations took place between Vannan for Oiljak and Taylor, and Howard B. Schneidewind for Schneidewind, for the purchase of the property. During these negotiations Vannan was told by Taylor and Howard B. Schneidewind, the representatives of Schneidewind, that no broker was involved in the transaction. Vannan testified that the absence of a broker and the necessity of having to pay a commission had the effect of lowering the price at which the property would be sold by Oiljak. Agreement was eventually reached for the sale of a portion of the property at a price of $145,000.
Sometime prior to the signing of the final agreement of sale Fitt and Decker met with Vannan and explained their activities with respect to the property and that a brokerage commission would be expected from the sale. This meeting *502 was discussed by Vannan with Howard B. Schneidewind and a clause was inserted in the agreement dated October 11, 1961 reading: "And the said purchaser hereby agrees to pay to any commissions that may be due on purchase price of one hundred forty-five thousand ($145,000.00) dollars."
On October 30, 1961 Fitt and Decker saw Howard B. Schneidewind at his home. They told him that they had heard the property had been purchased by Schneidewind and that if this was so, they expected a commission. Howard B. Schneidewind denied that Schneidewind purchased the property and told Decker that he "would not let him down." Following this meeting, and upon learning that the property had been purchased by Schneidewind, Decker telephoned Howard B. Schneidewind to ask about a commission and was again told that he "would not let him down."
The sale was completed between Schneidewind and Oiljak on November 17, 1961. This action was then commenced by Fitt for commissions due from that sale. Plaintiff alleges that the defendants wrongfully interfered with his opportunity to earn a commission and is consequently liable to the plaintiff for the amount of that commission. Defendants deny the allegation and assert, further, that they retained plaintiff's employee Decker as a consultant, to investigate the particular piece of property; consequently defendants are liable only for the fair value of the services actually performed but not for the brokerage commissions from the sale. Defendants further allege that the manner in which Decker was contacted by Taylor did not raise an expectancy on the part of plaintiff which the law will protect.
The cause of action which plaintiff alleges here, interference with prospective economic advantage, must be clearly distinguished from another and similar tort commonly referred to as interference with contractual or business relations. Under an allegation of interference with contractual relations recovery may only follow a showing that there was a wrongful interference with some contractual or business relationship. Wear-Ever Aluminum, Inc. v. Townecraft, etc., *503 Inc., 75 N.J. Super. 135 (Ch. Div. 1962). In the instant matter there is no need for the plaintiff to make a showing of interference with an existing business relationship. The tort here asserted is interference with the opportunity to enter into an advantageous business relationship. Consequently, the plaintiff need not establish an existing business relationship between himself and the seller Oiljak. DiCristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957); Longo v. Reilly, 35 N.J. Super. 405 (App. Div. 1955); Mayflower Industries v. Thor Corp., 9 N.J. 605 (1952).
It is well settled that the right to pursue any lawful business and to enjoy the fruits and advantages of one's industry are rights which the law protects against unjustified or wrongful interference. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934). The business of real estate brokerage is such a lawful business and is protected against unjustified interference. Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950); McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952); Sustick v. Slatina, 48 N.J. Super. 134 (App. Div. 1957). The essence of the protection the courts afford those claiming to have been interfered with is in adjudging whether what defendant has done is actionable and not in the exercise of an equal or superior right. The ultimate inquiry for the court is whether the conduct was:
"* * * `both injurious and transgressive of generally accepted standards of common morality or of law.' * * * In other words, was the interference by the defendant `sanctioned by the "rules of the game."' * * * There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must defendants' motive and purpose be proper but so also must be the means." Sustick v. Slatina, supra, p. 144.
The wrongful act must however be found to have interfered with some expectancy on the part of the plaintiff who, in the present case, is a real estate broker. A broker's chief stock-in-trade lies in his knowledge of available properties. Development of interests in these properties is his chief *504 activity, and he frequently does this with no more than an expectation that if he produces a buyer, the seller will pay a commission. The expectancy of a commission may arise from a written or oral agreement between the broker and seller, or it may arise, as in the instant matter, out of an offer to the public or to brokers generally. Myers v. Arcadio, Inc., 73 N.J. Super. 493, 499 (App. Div. 1962). This expectancy is neither legally without effect nor modified by the fact that there is no written agreement between the broker and seller. The statute of frauds is not a valid defense to a defendant in actions such as this. McCue v. Deppert, supra.
The action lies, therefore, for the wrongful interference with the conduct of negotiations which might culminate in a commission. In order for the plaintiff to prevail in an action such as this, the court must find from the evidence that but for defendants' wrongful acts it is reasonably probable that plaintiff would have effected the sale of the property and recovered a commission, Myers v. Arcadio, Inc., supra, but it is not necessary to show that the commission was actually earned. When the broker has brought together a customer and an owner and there is no substantial break in the ensuing negotiations, the broker is considered to have been the efficient cause of the sale and to have entitled himself to a commission. Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., 44 N.J. Super. 159 (App. Div. 1957).
Granting all the factors necessary to recovery indicated above have been established, the court must also find that the act of interference was wrongful. A wrongful act is one which in the ordinary course of events will infringe upon the rights of another to his damage, or one which is done with the purpose of benefiting the acting party at the other's expense and is not done in the exercise of an equal or superior right. The mere doing of an act which is damaging to another and to the actor's benefit is wrongful and not within the "rules of the game."
In deciding the instant matter these questions must be resolved  whether an economic advantage arose in favor of the *505 plaintiff by virtue of the negotiations between the parties to this action and Vannan, and whether there was a wrongful interference with the economic advantage of plaintiff and his opportunity to earn a commission from the sale of the Oiljak property. In deciding these questions the court will consider the argument made by defendants that their actions did not give rise to the expectancy of a commission, as alleged by plaintiff.
This argument was spawned by the unique set of facts this matter presents. The originality lies in the manner in which defendants approached plaintiff concerning the Oiljak property. Defendants requested information about a specific property, rather than requesting plaintiff to find a property meeting certain requirements.
Defendants contend that the circumstances in the instant matter may be distinguished from the facts underlying the decisions cited above. They argue that the facts of the instant matter do not establish a use by them of the stock-in-trade of plaintiff broker, and therefore plaintiff had no right to expect, and the law does not provide for, the payment of a commission under the alleged relationship. They further argue that Decker was retained as a consultant rather than as a broker, and consequently plaintiff had no right to a commission as a result of Decker's efforts pursuant to defendants' requests. Defendants' argument raises a defense not heretofore passed upon by our courts.
Defendants' arguments are without merit both in basic premise and in application to the main issues of this action. It is clear that a broker's stock-in-trade consists of properties offered for sale to the public or listed with brokers generally. Myers v. Arcadio, supra. In the instant matter the Oiljak property was both on the open market and available to brokers generally. This is evident both from the testimony of Vannan to the effect that dozens of brokers were working on the sale of the property, and from the testimony of a broker from the area where the Oiljak property was located, establishing that it was a matter of general knowledge *506 that the Oiljak property was for sale. These circumstances unquestionably placed the Oiljak property within plaintiff's stock-in-trade. The inquiry concerning the property was therefore a use of that stock-in-trade. The fact that defendants made the inquiry with reference to a specific property does not change this result. Development of an interest in property is a broker's chief activity, irrespective of whether the broker's attention comes to the potential buyer through a specific inquiry or through a general request to find property meeting certain specifications. It is this particular activity which the law protects, and defendants may not skirt that protection by the assertion they now make.
Defendants' claim that Decker was retained as a consultant will now be dealt with. In this regard, and relevant although not controlling, is a prior and similar transaction between the same parties here involved. About nine months prior to the first contact with Decker relative to the Oiljak property, defendants' agent Taylor contacted Decker and asked him to locate property meeting certain requirements. The property was found, the sale consummated and a commission was paid. In the instant matter the initial inquiry was made in the same manner and was a use of plaintiff's stock-in-trade, just as in the previous transaction between the parties. It is the opinion of the court that fair dealing under the circumstances, Sustick v. Slatina, supra, required that if defendants' intention was to retain plaintiff in a consultant capacity, it was incumbent upon them to make this clear to him. It is further the opinion of the court that one making use of the stock-in-trade of a broker must make it clear to the broker if no brokerage relationship is intended. This was not done in the instant matter.
Defendants' argument is without merit on the further ground that it does not meet the main issue of interference with advantageous relations. Assuming it had been made clear to plaintiff that he was being retained in a consulting capacity, if he had negotiated a sale between Schneidewind and Oiljak, he still would have been entitled to a commission from the seller. The fact that Schneidewind agreed *507 in the contract of sale of the property to pay a commission that might be due and owing to plaintiff does not affect this issue. The seller of property is the party who is primarily liable for a commission, and it is the opportunity to earn a commission from the seller of which plaintiff complains.
At this juncture it has been shown that an economic advantage did arise as a result of the dealings between plaintiff, defendants and Oiljak. The next question must be whether it is reasonably probable that plaintiff would have effected the sale of the property and recovered a commission. Myers v. Arcadio, supra. Plaintiff clearly was the means by which the parties to the sale were brought together. This being the case, it is only necessary to find that there was no break in the ensuing negotiations which resulted in a sale, thereby entitling the broker to a commission. Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., supra. While the negotiations leading up to the ultimate sale covered a considerable length of time, there can be no doubt that from the time of the first contact by Taylor with Decker, plaintiff's efforts to effect a sale were unbroken. It is apparent, also, that Oiljak was prepared to pay any commission which might be due from the sale of the Oiljak property since brokers were readily given the opportunity to effect a sale of the property. The clause which was inserted in the contract between Oiljak and Schneidewind, requiring Schneidewind to pay brokerage commissions, is also an indication that Oiljak was aware of its responsibility to pay a commission for the efforts of a broker who might have effected the sale. The only obstacle standing in the path of plaintiff's securing the commission was the action of defendants. It was unquestionably an interference.
Before there may be recovery, however, the interference must be found to have been wrongful. An act is wrongful under the law if it be done for the purpose of benefiting the acting party at the expense of the person who is interfered with. Not only must defendants' motive and purpose be proper, but so also must be the means. It is apparent from *508 the evidence that defendants were taking advantage of plaintiff soon after the first inquiry was made about the property. They accepted the efforts and interest of Decker. Thereafter they attempted to lull plaintiff into a false sense of security by assuring him that he would not be let down. Further, they represented to Oiljak that no broker was interested in the sale, and it was not until plaintiff approached Oiljak that the activity of a broker was acknowledged by them. It is clear that the representation by defendants that no broker was involved in the sale resulted in the reduction of the asking price. In short, defendants attempted to benefit themselves at the expense of plaintiff while not acting in the exercise of an equal or superior right. This kind of activity will not be sanctioned by the court. Defendants' actions are far from the common conception of just dealing and fall far short of the "rules of the game."
The court therefore finds in favor of plaintiff and against defendants in the amount of the commission on the sale of the Oiljak property, stipulated to be $8,700, plus interest from the date of the transfer of the property, November 17, 1961.
An appropriate order for judgment may be submitted.