**INVENTIVE MUSIC, LTD., a New York corporation d/b/a Meadow Music Group, Plaintiff,**

v.

**Jack L. COHEN and First National State Bank of N.J., co-executors of the Estate of Herman Lubinsky, Sr., dec'd; Jack L. Cohen, and Columbia Pictures Industries, Inc., a Delaware corporation, Defendants.**

Civ. No. 76–180.

United States District Court, D. New Jersey.

June 9, 1982.

Gennet & Kallmann by Stanley W. Kallmann, Roseland, N.J., for plaintiff.

Carpenter, Bennett & Morrissey by John C. Heavey, Newark, N.J., for co-executors and Jack L. Cohen.

Morgan, Melhuish, Monahan & Spielvogel by Elliott Abrutyn, Livingston, N.J., for Columbia Pictures.

## MEMORANDUM

BIUNNO, Senior District Judge.

This case was called for trial on June 1, 1982, and before having the panel brought to the courtroom to select a jury, the court questioned the lawyers for information to be on hand if needed for the voir dire of the jurors. In the course of that colloquy, it came to light that there was no diversity between the plaintiff, a New York corporation with its principal place of business there, and the defendant Columbia Pictures Industries, Inc., a Delaware corporation with its principal place of business in New York.

The only basis for subject-matter jurisdiction is diversity of citizenship, and 28 USC § 1332(c) makes it explicit that for diversity purposes, a corporation is taken as having multiple citizenship (1) of *any* State by which it was incorporated and (2) of *the* State where it has *its* principal place of business.

The case has been tried twice before. The first trial ended in a mistrial. The second ended in a judgment for defendants at the end of plaintiff's case, a result that was reversed with directions for a new trial, 617 F.2d 29 (1980). To avoid a third fruitless trial, the court decided that the jury should not be then selected and directed the submission of briefs a few days later. Briefs have been submitted and argument heard. The court concludes that the action should be dismissed, leaving the matter to be resolved by the Superior Court of New Jersey. The background and rationale follow.

*Framework*

The events, relationships and transactions giving rise to this litigation are part of a

framework outlined here as context, drawn from the pleadings, the pretrial orders, the initial trials, the opinion of the Court of Appeals and colloquy with counsel including inspection of some of the main exhibits. It should be understood that the outline given is not of facts not in dispute, although some of them are, since a number of them, and certainly the inferences to be drawn, are in sharp dispute. In fact, it appears from the review that under applicable New Jersey law, most or all of the significant facts will present jury questions and the eventual results will turn on what facts the jury finds and what inferences they draw in light of the allocation of burdens of persuasion and matters of credibility.

The time period involved runs from late 1973 to the summer of 1975. At the start of that period, the late Herman Lubinsky was the owner of a music business carried on by a number of New Jersey corporations. The major one evidently was Savoy Records. The others were Worldwide, Medallion and National Music. Mr. Lubinsky was evidently giving thought to the sale of Savoy, at least, and perhaps the others, and some word of this evidently got around.

Jon Meadow, who was active in some branch of the music business evidently heard of this and called Savoy. He was told to talk to Jack L. Cohen, who was Mr. Lubinsky's personal attorney and business advisor, which he did. After a number of conversations, and several letters in late February from Meadow to Cohen, Cohen replied that in no circumstances was Savoy to be offered for sale; however, he said that if an interested buyer communicated with Cohen through Meadow, Meadow would be recognized as the finder. There was also a conversation, which Meadow does not deny, that he was not to disclose Savoy's name.

There were negotiations with at least one prospect with whom Meadow had no connection, which went nowhere because the prospect lacked a satisfactory down payment. There were several other prospects brought in by Meadow, but these did not culminate in a sale. Rather, the litigation involves negotiations with Columbia and an eventual sale to Arista Records, a subsidiary of Columbia. Meadow was not recognized as the finder on that sale, and makes two claims (1) that he was contractually entitled to be recognized as the finder and seeks judgment for a finder's fee against Mr. Lubinsky's estate, and (2) that Columbia tortiously interfered with his relationship with Mr. Lubinsky, and later his estate and seeks damages equivalent to a finder's fee plus punitive damages, from Columbia. Also in the case are cross-claims for indemnity, both by the estate against Columbia and by Columbia against the estate.

At one time, plaintiff's contract claim was asserted not only against the estate but also against Savoy, Worldwide, Medallion and National (the Lubinsky companies involved in the sale) but these parties were eliminated by stipulation on the record of April 11, 1979, in which the estate agreed that since it had been the seller and had received the net proceeds of sale, there was no need to leave the companies in the case since the estate would pay any judgment.

This point was explored again on June 1, 1982 and it appeared that since Mr. Lubinsky, and later his estate, owned all or substantially all of the stock of his companies, there could be no sale of either stock or assets without his (or his estate's) control. Sales of wholly owned corporate businesses can be made by a sale of the stock or of their assets, and which is chosen is usually part of the negotiations, and an interested prospect may not know, just as the seller will not know, at the start which choice will be made. The stipulation eliminates a number of parties and some potentially complex issues.

There was also a time when the Columbia subsidiary, Arista Records, was a party on a claim by the estate for contractual indemnity based on a provision in the sale contract. This claim was disposed of by summary judgment in favor of Arista before trial. There is no transcript of the hearing, but the court is told the reason was that the form of indemnity provision ran against Arista only if a fee was recovered by some-

one claiming to have been engaged by it. Since the claim here was grounded on an alleged engagement by the seller, and since the provision was not drawn to cover a claim of tortious interference, the summary judgment was entered.

In any event, after the exchange of letters with Mr. Cohen in late February, 1974, Meadow attempted to talk to someone at Columbia but without success. He wrote a letter to Columbia March 7, 1974 to the effect that he knew of a record company that might be purchased, but did not mention Savoy. A Columbia employee, Adler, phoned Meadow on March 18, 1974 but Meadow was not in.

■ Mr. Lubinsky died March 24, 1974. This terminated Cohen's agency and any alleged sub-agency of Meadow, under the usual rule, see *Young v. Potter Title & Trust Co.,* 114 N.J.L. 561, 178 A. 177 (Sup. 1935), aff'd. 115 N.J.L. 518, 181 A. 44 (E & A 1936). Mr. Lubinsky's will was probated April 3, 1974 and his executors qualified. The court is told that there will be evidence that the co-executors revived or ratified or reauthorized the arrangement with Meadow, whatever it was.

Whether there were further efforts by Meadow or Adler to reach each other does not now appear but there is evidence that on June 28, 1974 they did talk and Adler asked for the name of the company for sale, and Meadow disclosed it was Savoy. Adler said he would get back to Meadow by July 12, 1974.

On July 9, 1974 Adler spoke to Cohen about Savoy and was asked whether the inquiry was through a finder and he said it was not. On July 12, 1974 Adler and Meadow spoke, and Adler told Meadow that Columbia had already been looking into a purchase of Savoy, that it was considered an in-house deal, and that Meadow's services would not be needed. On July 15, 1974 (a Monday), Meadow wrote Cohen to claim he was responsible for Columbia's interest. Sometime during the same week, on receiving the letter, Cohen spoke to Meadow and then called Adler to report Meadow's claim and to say that if what Meadow said was true, Adler had been far from candid with him. Adler insisted that Columbia had already been working on the matter before Meadow's call of June 28th. There is said to be a later letter from Meadow to Cohen whose meaning is in dispute, but which may be claimed to evidence a disclaimer or abandonment by Meadow of any further interest in the Columbia matter. In any event, Meadow took no part in negotiations, which led to a first draft agreement in late summer or so of 1974 and a final contract and closing in about mid-1975.

*The claims involved.*

With the elimination of Arista and the Lubinsky music companies, the remaining parties are Inventive Music Ltd. as plaintiff, the Lubinsky estate and Columbia as defendants, plus the cross claims of the defendants against each other for indemnity.

■ There is an ambiguity as between the pleadings and the exhibits as to the identity of the plaintiff. The letters from Meadow to Cohen in late February, 1974, are signed "Meadow Music Group d/b/a Inventive Music, Ltd. by Jon Meadow, President." The complaint reverses this designation and names "Inventive Music, Ltd., d/b/a Meadow Music Group". The evidence at trial may show that the designated finder was Jon Meadow, not the corporate entity Inventive Music, Ltd. While pleadings may be amended to conform to the evidence, F.R.Civ.P. 15(d), an amendment to substitute the party plaintiff at that late stage is quite rare and in any event could open up the question of subject-matter jurisdiction. The court is told that Jon Meadow is now a citizen of New Jersey, living in Matawan. His current affidavit says he was a citizen of New York when the complaint was filed, which would provide no diversity as to Columbia but would as to the estate. However, there is only the conclusory statement and no evidence. The burden of establishing diversity is on the plaintiff, and if that evidence shows New Jersey citizenship, then diversity will be destroyed

as to the estate and preserved as to Columbia.

■ Plaintiff's claims are in the alternative. To recover against the estate he must show a contractual basis since the subagency arrangement amounts to a promise in exchange for an act to be performed—a unilateral contract. This is clearly not a case where the broker is engaged to make an effort to sell and to be paid without regard to who effectuated the sale, as in *Kruse v. Ferber*, 91 N.J.L. 470, 103 A. 409 (Sup.1918). Here, plaintiff has the burden of establishing that he was the efficient producing cause in bringing about the sale. *De Benedictis v. Gerechoff*, 134 N.J.Super. 238, 339 A.2d 225 (App.1975), and where the matter is in dispute, the issue is for the jury, *Weinstein v. Clementsen*, 20 N.J.Super. 367, 90 A.2d 77 (App. 1952).

While the evidence at the last trial was sufficient to go to the jury as it stood, especially with the evidence that the Court of Appeals found inadmissible omitted, and other evidence found not binding on plaintiff though offered on its case, the fact remains that the analysis made by the Court of Appeals was in light of the rule that it had to consider plaintiff's evidence most favorably to it and with all favorable reasonable inferences that could be drawn. A jury is not so bound, and would be free to find if it chose to that plaintiff had not proved its claim against the estate.

Without expressing any view as to likelihood, it could decide that it was Meadow, not the corporations, that was hired and acted (the question of "real party in interest" is an issue in the case). It may regard adversely Meadow's failure to inform Cohen at any time, from his letter of March 7, 1974 until July 15, 1974 (or later) that he was in communication with Columbia. It may regard adversely his disclosure of Savoy's identity to Adler, on June 28, 1974, contrary to his instructions. It may regard adversely his later letter to Cohen as a sufficient disclaimer of further interest to warrant Cohen in dealing directly with Columbia without investigating Meadow's initial claim further. There may be evidence that Lubinsky's death in late March, 1974 was known in the industry to an extent that the probable sale of his music business by the estate became obvious. And so on.

■ The claim against Columbia is different, being based on tort rather than contract, yet drawing in the contract aspect fully as a predicate for the tort claim. In itself, it has two alternative bases. One is that plaintiff may be able to persuade the jury that he had a contractual arrangement with Lubinsky, and later his estate, that Columbia was aware of it, that Columbia wrongfully and without justification interfered with that arrangement and intentionally induced the estate to reject his claim, that in the absence of that wrongful interference it is reasonably probable that it would have been recognized as the finder and received the finder's fee, and that as a result it suffered damages. If it can also persuade the jury of the additional elements called for under New Jersey law, it can also recover punitive damages from Columbia (but not from the estate).

■ The variation in this claim is that even if the jury finds that plaintiff could not enforce his claim against the estate, it may recover from Columbia if the jury finds that except for Columbia's allegedly wrongful conduct, the estate would have been willing to recognize plaintiff and pay a finder's fee even though not legally bound to do so. This would be on the basis that Columbia prevented plaintiff's performance. See *Fitt v. Schneidewind Realty Corp.*, 81 N.J.Super. 497, 196 A.2d 26 (Law, 1963).

The problems in respect to the cross-claims are more complex. The estate's cross-claim against Columbia is grounded on a common law theory of indemnification that would apply if the jury finds that Columbia had tortiously interfered with plaintiff's relationship. The Columbia cross-claim against the estate is grounded both on a claim of contribution from a joint tort-feasor and on the contract indemnity

clause of which it claims to be a third party beneficiary.

The jury findings on these cross-claims will necessarily rest for their predicates on the jury findings made on plaintiff's claims against the separate defendants.

*Applicable law.*

As the case now stands, there can be no question whatever that the court lacks jurisdiction over the subject matter. There is no federal question of any kind, and jurisdiction must rest, if it exists at all, on diversity grounds only.

█ Since the case originated here, and is not a removed case, the applicable statutes are somewhat different. In a removed case, if there be a separate and independent claim which would be removable if sued on alone, and it were joined with an otherwise non-removable claim, the entire case may be removed and the court may determine all the issues, or, in its discretion, it may remand all otherwise non-removable matters. See 28 U.S.C. § 1441(c).

█ Where suit is originally filed in federal court, the rule is that there must be complete diversity. This rule was laid down in *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806) and consistently followed since. See, for example, *Owen Equipment v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In that case, Kroger had pleaded Iowa citizenship and alleged that Owen was a corporation of Nebraska with its principal place of business there. Owen's answer admitted it was a Nebraska corporation and denied all other allegations. It was not until the third day of trial that it appeared that Owen's principal place of business was in Iowa, not Nebraska, and that both it and plaintiff were citizens of the same state. Despite this, the trial court allowed the trial to continue and allowed judgment for plaintiff after jury verdict. The Eighth Circuit affirmed on the theory that the trial court had discretion to exercise ancillary jurisdiction because the claim arose out of the same core of operative facts as the claim against a non-diverse defendant. The Supreme Court

reversed, pointing out that the diversity statute is narrower than Article III.

It pointed out that Kroger had destroyed diversity when the complaint was amended to name Owen as a defendant, even though Owen had been brought in by third-party complaint of the original defendant. It disapproved the technique of defeating the requirement of complete diversity by naming only diverse parties and then amending to name non-diverse parties who have been impleaded by third-party complaint.

Here, plaintiff added Columbia on its own amendment before any impleading by the estate. The estate's cross-claim was filed only after Columbia had been brought in on the amended complaint.

Thus there can be no question that Columbia must be dismissed. The real question is whether the whole case should go, or whether part of it should be kept for trial. If a part is kept, it would consist of plaintiff's claim against the estate and the estate's cross-claim, treated as a third party complaint against Columbia. Thus, Columbia would still be in the case but would not be exposed to a judgment for plaintiff including punitive damages. This question turns on a proper application of F.R.Civ.P. 19.

The two most pertinent cases are *Provident Tradesmens etc. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), and *Field v. Volkswagenwerk,* 626 F.2d 293 (CA3, 1980). Both cases raise more questions than they answer.

In *Provident Tradesmens,* a number of plaintiffs with wrongful death and injury claims filed suit for declaratory judgment against the driver's estate and the owner's insurance carrier to determine whether the policy provided coverage for the driver. The owner himself was not a party due to lack of diversity. As to two of the estates, there was a directed verdict for them against the carrier based on the owner's bar to testifying under the Dead Man's Statute, and a like verdict by the jury for the live plaintiff, as to whom he did testify. On appeal, the Court of Appeals raised the question whether the action could proceed

without having the owner as a party, and ruled en banc that it could not.

The Supreme Court reversed, noting that the Court of Appeals had not applied the tests of Rule 19, and observing that the trial had gone to judgment thus making it impossible for the Court of Appeals to evaluate the question whether the action should be allowed to proceed or be dismissed. It is clear from the opinion that the Supreme Court did not say that the trial court could not have dismissed under Rule 19 before proceeding to trial. The case is consequently pertinent mainly where the matter of dismissal under Rule 19 is brought up for the first time on appeal without having been considered by the trial court, although the analysis of Rule 19, then newly amended, is generally useful.

In *Field v. Volkswagenwerk,* 626 F.2d 293 (1980), suit was filed by two survivors and the administratrix of a decedent who were involved in the same auto accident. Before trial, it appeared that one of the survivors, who was also the administratrix, was an alien as was the defendant, and so there was no diversity as to them.

Viewing the alien as an indispensible party, and considering that a new appointment of a non-alien administratrix would not serve to provide diversity where it did not exist before, the trial judge dismissed the case. The Court of Appeals agreed with the rulings on lack of diversity, but disagreed that the non-diverse parties were indispensible. It reversed the dismissal of the whole case and remanded for trial of the claim of the one plaintiff as to whom diversity existed.

[NOTE: The case file here records that after remand the entire case was dismissed without prejudice. Presumably, all the plaintiffs filed a fresh suit in Rhode Island promptly after the trial court's original dismissal, and saw no point in separately litigating here the single diverse claim.]

The dissent was of the view that the trial record was insufficient to enable the Court of Appeals to decide the issue whether the alien plaintiff was indispensable, and that

the newly-appointed administratrix could not be substituted to provide diversity for the wrongful death claims. It was not confident that a Rhode Island statute would prevent a time bar to a new action. It would have remanded to consider these questions.

Neither opinion indicates how the action came to be brought in New Jersey, with the decedent a citizen of New York, the two survivors living in Rhode Island (one being an alien) and the accident occurring in Rome, Italy in a German car. This would seem to be a case of forum non conveniens, but the subject is not mentioned. See *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

*Field* is quite different from this case. Although one person was killed and two were injured while riding in the same car, and while the suit was doubtless rested on a claim of some alleged defect of manufacture common to all claims, the fact was that each plaintiff had an independent claim which could be tried and decided separately from the others without prejudice to any party.

*Evaluation and findings.*

In the present case there is a single plaintiff making alternative claims against different defendants, on a state of facts which raises jury issues all along the line.

■ The test of Rule 19(b) is a test of equity and good conscience and whether, from that perspective, the action should proceed among the parties [who can be heard] before it, or should be dismissed. The Advisory Committee notes to the 1966 amendment make clear that this is the fundamental question to be decided, measured by the four factors to be discussed, and that the labelling of a party as "indispensible" is the consequence, not the measure, of the evaluation. The language is "the [non-diverse] party being thus regarded as indispensible". The decision whether to proceed without all the parties or to dismiss is a "pragmatic" (practical) one.

The court first notes that while two trials of the case were begun, neither ended in a valid judgment and so the questions are the same as though no trial had begun and the case were up for trial for the first time.

Next, it is observed that the Superior Court of New Jersey has undoubted jurisdiction of the subject-matter, and equal jurisdiction over the parties. The Superior Court is a court of original general jurisdiction throughout the State in all causes, N.J. Const.1947, Art. 6, sec. 3, par. 2. Diversity is irrelevant. State law claims and issues are the only ones going to the merits. If the Superior Court enters a judgment against the Lubinsky estate it will be free of the restrictions imposed on federal courts in regard to execution, see *Byers v. McAuley,* 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867 (1893); *Yonley v. Lavender,* 21 Wall 276, 22 L.Ed. 536 (1874).

Although the usual 6-year statute of limitations has now run out, a Superior Court suit can still be timely filed under the principle lately announced in *Galligan v. Westfield Centre Service,* 82 N.J. 188, 412 A.2d 122 (1980). There the court noted that a mistake in the selection of a court having questionable or defective jurisdiction should not defeat tolling of the statute when all other purposes of the statute of limitations have been satisfied. Superior Court filing of an otherwise untimely suit was allowed especially where "the ignorance is not the plaintiff's, but that of his previous attorney", 82 N.J. at 194, 412 A.2d 122. Unlike the *Field* case, where Chief Judge Seitz was not confident that the Rhode Island tolling statute would be applied in a case where the first suit was in a federal court, the circumstances in *Galligan* were precisely that. As here, a plaintiff sued two defendants in federal court, one diverse and the other not, and the case was dismissed for lack of diversity.

If the whole case is tried before a single jury on all claims and issues, the presence of the many jury issues will tend to assure a consistent outcome. With separate trials by separate juries in different courts, the risk that the facts found on the same evidence will be different is heightened, not to mention the essential doubling of trial costs.

Taking up the tests in order, the first question is the extent to which a judgment rendered in Columbia's absence might be prejudicial to it, or to plaintiff or the estate. Even with the cross-claim included, the issues on the cross-claim draw in the elements of tortious interference to such an extent that the jury might be persuaded to find that plaintiff cannot recover from the estate, and the case would end there since no indemnity could be involved. In that event, the estate would have no quarrel, but plaintiff would have been prejudiced because the same jury, had it had both claims against both defendants before it, could return a verdict based on tortious interference and assess punitive damages as well. On the other hand, that same jury could find against the estate and against Columbia, on the cross-claim as well. In that event, plaintiff would be prejudiced by the inability to recover punitive damages from Columbia. Columbia would also be prejudiced because its claim for contribution or indemnity in respect to the estate can be heard and decided only at a trial where plaintiff's direct claim against Columbia is involved, which it cannot be here. Finally, that same jury could find against the estate both on the plaintiff's claim and on the cross claim, in which case the estate would be prejudiced by the jury's inability to consider the direct claim by plaintiff against Columbia. Thus, on the first factor, one or more parties run a risk of prejudice by a judgment at a trial in which Columbia's liability to plaintiff and its dependent claim against the estate are not before the jury. The weight of the first element favors dismissal.

The second question is the extent to which the risk of prejudice can be lessened or avoided. The only form of provision in the judgment or shaping of relief, or other measures that could be employed would involve the use of a tentative judgment, subject to review or reconsideration after a second suit in Superior Court, possibly in-

cluding a provision that the outcome here not be evidential in the second suit, which would be by plaintiff against Columbia with a third-party complaint against the estate. This would be effective only if it turned out, after two more trials (and possible appeals) that the jury verdicts were consistent. If they were not, the technique would increase the risk of prejudice rather than reduce it. There is so much of the evidence which is of conversations and so little of documentation (and informal, at that), as to make the risk of inconsistent verdicts rather high than low. Each claim could easily go either way in separate trials. The second element favors dismissal.

The third element is whether a judgment without Columbia as a main defendant would be adequate. In one sense it would be, and in other senses it would not, depending on what the verdict is. This element is largely in equipoise, but to the extent that it overlaps the second element, as the Advisory Committee observes, it leans toward dismissal.

The fourth and final element is whether plaintiff will have an adequate remedy in the event of a dismissal for inability to join Columbia as a defendant. Had this question been raised before the statute of limitations ran out, the answer would have been an unqualified "Yes". Because time has passed with two fruitless trials plus an appeal, the statute has technically run. The record is not entirely clear on this for several reasons. If Columbia is not authorized to do business in New Jersey, the statute may have been tolled by the provisions of N.J.S. 2A:14–22. And see, *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982) upholding the tolling provision in the face of an equal protection and due process challenge. See, also, *Velmohos v. Maren Engineering*, 83 N.J. 282, 416 A.2d 372 (1980). While *Velmohos* allows laches (prejudicial and inexcusable delay), it is unlikely to withstand scrutiny here. Thus, plaintiff's former attorney, pleaded citizenship inadequately. The amended complaint that brought Columbia into the case alleged that it was "a resident of the State of the Delaware" [sic].

Columbia's answer raised, as its second separate defense, "There is no diversity of citizenship between this defendant and the plaintiff." In its crossclaim, Columbia, identified itself merely as "a Delaware corporation" without disclosing the location of its principal place of business. That answer was filed June 29, 1978, well before the 6-year statute could have run. In its papers submitted for the pretrial order filed January 4, 1979, Columbia makes no mention of lack of jurisdiction. This is a trial tactic the court has seen all too often, namely of pleading lack of jurisdiction and withholding any motion or further mention until the statute has run, knowing that in the absence of diversity, there can be no effective judgment.

In *Owen*, supra, the fact showed up on the third day of trial, yet the Supreme Court refused to allow application of the court's ancillary jurisdiction and reversed the Court of Appeals. In *Wymard v. McCloskey*, 342 F.2d 495 (CA3, 1965) (en banc) the court recorded that:

> "In so holding, we observe that numbers of cases continue to come before us on appeal in which failure to allege and prove the principal place of business of a corporate party has caused the record to be insufficient to establish the existence of alleged diversity jurisdiction. *Yet, absent federal jurisdiction, no judgment of a federal court can stand.* It is the continuing responsibility of trial counsel and trial courts to see that all essential jurisdictional facts are alleged and adequately established in the record." 342 F.2d at 497. (emphasis added).

The court attempts to seek out such cases, as early as it can, so that cases not within its jurisdiction can be dismissed as early as possible thus reducing the risk that the plaintiff will have no remedy. Most of them are one-on-one cases that cannot be saved in any way. Too many are filed here, without a second, precautionary suit filed in Superior Court a few days later and stayed, as knowledgeable lawyers do.

As it is, it is most unlikely that Columbia can raise laches in a State court suit filed late as allowed by *Galligan*. Columbia knew there was no diversity when it filed its answer in 1978, raised it in the most inconspicuous manner possible, and said or did nothing more on the issue knowing that if judgment for plaintiff went against it, the judgment could yet be attacked for lack of jurisdiction. Since it was brought into the case on plaintiff's summons to the amended complaint, it may have also had in mind challenging any judgment against it on the cross-claim, for which no independent summons was issued as it would have been for a third-party complaint.

Under these circumstances, New Jersey is most likely to accept the late filing and to reject any claim of laches raised by Columbia.

■ At the hearing of June 7, 1982, plaintiff's attorney said that a complaint against Columbia alone had been filed that day in Superior Court. The estate's attorney said that it would not raise any defense of statute of limitations to a suit against it in Superior Court. Plaintiff raised the question whether a dismissal here and refiling in Superior Court would cut down the interest chargeable against the estate. The court sees no reason why it should. What is claimed is a contractual finder's fee or commission which, if the claim is valid, was due and payable at the latest when the closing took place. The obligation is one to pay money, and compensatory damages necessarily include the principal sum plus compensation for loss of its use, which is interest. Any other rule would enable an obligor to deny liability to pay money due, and have free use of the money from its due date to the date of judgment. Merely to suggest this is to display its fallacy.

New Jersey has adopted a rule, R. 4:42–11(b), to allow pre-judgment interest on tort claims, which runs from a date 6 months after the cause arises or from the date "an action" is instituted, but this rule was adopted to discourage dilatory conduct by defendants on tort claims. Before that rule, no interest ran on tort claims until reduced to judgment. It is of some significance that the court saw no need to adopt any rule for contract claims involving obligations to pay money. As with both the original complaint and the amended complaint here, damage demands for contract claims of this kind are for the amount that is due and unpaid, with interest and costs.

If the different rule for tort claims operates to reduce plaintiff's claim against Columbia, it is a disadvantage the court cannot consider because it has no jurisdiction at all over the claim against Columbia, and plaintiff is as much at fault for not checking out the matter of jurisdiction the moment it was raised in Columbia's answer.

On the fourth element, then, the court finds that plaintiff has an adequate remedy if the entire action is dismissed for inability to continue it with Columbia as a main defendant and with its cross-claim against the estate.

Each case is to be evaluated on its own facts. Each case is in this sense unique. Here, the evaluation of all four factors points to dismissal of the whole case so that it may be tried but once in the Superior Court where all these collateral questions will be non-existent. The goal is for a single trial with all parties and issues tried together if at all feasible. That goal simply cannot be realized here. All that could conceivably be tried here would be plaintiff's claim against the estate and the estate's cross-claim against Columbia. The second suit would have to be on plaintiff's claim against Columbia and its cross-claim against the estate. Such a sequence of trials under the apparent facts of this case would be a disastrous miscarriage of the judicial process and would further delay settlement of an estate of a decedent who died in 1974.

It is indeed unfortunate that the defective jurisdiction was not noticed four years ago when it was first pleaded. Dismissal, coupled with refiling in Superior Court under *Galligan*, should go far to discourage the concealment of defects of jurisdiction and encourage prompt and careful attention to such questions.