Complaint P103 (emphasis omitted).

**John F. BRITTON, Plaintiff,**

v.

**The HOWARD SAVINGS BANK and Agents Auto Recovery Service, Defendants.**

**Civ. No. 82–4055.***

United States District Court, D. New Jersey.

March 23, 1983.

Memorandum July 25, 1983.

* Reversed in part (as to attachment), 727 F.2d

Alan J. Karcher, Sayreville, by Gerald A. Dienst, Monmouth, N.J., for plaintiff.

Crummy, Del Deo, Dolan & Purcell by Frederick C. Kentz, III, Newark, N.J., for Howard Bank.

Goodman, Rothenberg & Galluccio by Robert I. Goodman, Paterson, N.J., for Joseph Rascio.

Philip M. Saginario, Paterson, N.J., for Mary Lou Rascio.

MEMORANDUM

BIUNNO, Senior District Judge.

This case began with filing on December 2, 1982 as a suit to recover a Mercedes-Benz car and for damages against the Howard Bank, and an organization engaged by it to repossess the car. There is evidently a complex history in respect to the title and a dispute about the lien.

Britton sought an order to show cause for immediate delivery of possession. By memorandum of December 3, 1982, the court explained why he could not by the method he chose.

He then filed a motion for summary judgment for return of the car, and the Howard filed a motion to stay the suit until disposition of a suit filed by it against

315 (CA 3, 1984).

Britton and others to enforce an alleged settlement agreement, Superior Court, Chancery, Essex No. C–1198–82, filed November 16, 1982. Britton's then attorney was informed that suit had been filed, see letter of November 19, 1982 to Rothschild affidavit of January 3rd.

On January 11th, before the hearing date, the court issued a memorandum asking that specified questions be answered at argument, and noted that the original summons and proof of service were not filed. It was eventually filed on January 13th, showing service only on Howard Bank. The court's memo, mailed to Agents Auto Recovery Service was returned undelivered on January 17, 1983, see Memorandum of that date.

The two motions were heard January 24th as shown by the docket sheet. Britton's motion was denied. The Howard Bank's motion was granted. There was extended colloquy and articulation on the record, but no party has ordered a transcript.

The order reflecting those rulings was signed January 25, 1983 and filed the same date. It reflects the court's concern over the existence of subject-matter jurisdiction; no one knew what "Agent's Auto Recovery Service" is or where it is a citizen. The court's recollection is that it felt the Superior Court suit should proceed, and not this one. The record of the transcript would be more reliable. [NOTE: The January 24th. transcript, later produced, showed that the court reserved ruling on the Howard Bank's motion for stay, and ordered instead a limited stay for discovery on the question of Agents Auto's citizenship since diversity jurisdiction did not appear.]

On March 22, 1983, Howard Bank's and Britton's attorneys appeared. Howard wanted the court to lift the stay, allow it to file a "crossclaim" against Agents Auto Recovery Service, and as well against Joseph Rascio and Mary Lou Rascio, a/k/a Mary Lou De Iesso.

The papers submitted were returned at the close of the hearing, which ended with a ruling that the stay would not be lifted,

and counsel were asked to return to the court a duplicate set so they could be appended to a memorandum and made part of the record. They have not been received at this writing and the court is left to articulate its reasons without them.

The decisions in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and in *Finberg v. Sullivan*, 634 F.2d 50 (CA–3, 1980, en banc) raise serious doubts of the validity of New Jersey's attachment statutes. There is no federal law providing for attachment as process. At most, F.R.Civ.P. 4(e) draws in State law for that purpose.

But the attachment statute, N.J.S.A. 2A:16–1, et seq. was drawn on the jurisdictional principles of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1874). While parts of *Pennoyer* are no doubt still good law, others are not.

After *Fuentas v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) the Supreme Court of New Jersey amended its rules of practice to conform to the requirements of that decision. No changes have been made since *Shaffer*, probably because the source of attachment is entirely statutory, see *Tanner v. Ciraldo*, 33 N.J. 51, 161 A.2d 725 (1960).

Due to its grave doubts that issuance of a writ of attachment could validly issue under the circumstances of this case, as well as the open question of subject-matter jurisdiction, the court concluded that the stay should not be lifted.

Also noted is the fact that the property to be attached, as recalled, comprises four 6-month time deposits with Howard Bank, issued to Mary Lou Rascio, one being in trust for a Joseph Rascio whose identity is not known.

The contract to recover the car for Howard Bank, as recalled, is signed only by Joseph Rascio. It is that contract that gives rise to the intended claims for indemnity against *liability* and probably exoneration in equity from suit. The equitable remedy of sequestration, in aid of the remedy of exoneration, are available in the

Superior Court. They may not be available here due to the doubts about subject matter jurisdiction.

## MEMORANDUM

In this case, which began with filing of the complaint on December 2, 1982 this memorandum will be the 40th entry on the docket sheet, with an appeal already pending in the Court of Appeals, and no answer yet filed although the time to answer expired January 19, 1983, five days before the first hearing, on January 24, 1983, transcript of which was not obtained and filed until July 11, 1983.

For the most part this active and unproductive history has occurred because plaintiff evidently did not appreciate that the court had reserved ruling on the Bank's motion for an abstention stay until it was established by discovery that this court in fact did have diversity jurisdiction.

With the obtaining of the transcript, plaintiff's attorney wrote the court to note that the court had said:

"Well, the motion to stay is being reserved. I think you better send me an order granting the stay to the extent that no steps are to be taken in this cause including filing of an answer except the discovery to identify the citizenship of Agents Auto Recovery Service, and when that is completed, the court is to be informed that you're both ready and I will set a date for—continued hearing date to be set." [1/29/83 Tr., p. 22, lines 4 to 12].

The record here does not show what, if anything, occurred in the two months from late January to late March, other than the filing of a substitution in early February. In any event, the court was not informed, as the order of January 25th directed it should be, so that a date could be set, nor has it been so informed since.

After the effort had failed to lift the stay for the sole purpose of filing a cross-claim (no answer was tendered) as a basis for seeking a writ of attachment and then restoring the stay, the decision in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) came to the court's

attention and it issued a memorandum allowing any party to file for reconsideration. It also called for the transcript.

Such a motion was filed and argument heard June 13, 1983, but at that time the transcript of January 24th had not yet been filed. When it did come in it became obvious that there had been no abstention at all.

Thus, as it turns out, the *Moses H. Cone* case, and the other decisions there referred to, have no application here until such time as the hearing on the abstention motion has been decided. It may be that with the substitution, and with no transcript, the Bank's present attorney was unaware of the precise nature of the disposition. Nor is there a clue from the docket sheet which should have read to show the grant of a limited stay with decision reserved and date to be set.

Although it happens that everyone has been barking up the wrong tree, the papers presented and colloquy heard indicate that enough may have been learned in the course of discovery in the Superior Court case to enable the plaintiff to file an amended complaint showing diversity jurisdiction, and an order has been entered along the lines originally contemplated although without the benefit of discovery in this court, and without deciding yet whether diversity jurisdiction exists. To the extent that discovery in the Superior Court may be relevant, the order allows its use here, and to prevent duplicate expense, forbids its repetition.

Both sides are reminded that federal courts are courts of limited jurisdiction and that they must constantly be aware to test the question early. On its face, the Britton complaint here failed to show diversity jurisdiction, and the court so commented early in the first hearing,

THE COURT: So, we don't know whether we have diversity, then.

MR. DIENST: As against that party.

THE COURT: Well, if you don't have all the defendants of a different state than the plaintiff, we don't have complete diversity. (Tr. 1/24/83, p. 3, lines 16 to 21)

\*     \*     \*     \*     \*     \*     .

THE COURT: That is the question, whether the case is properly here. I'm not sure I have jurisdiction, I'm not sure there's diversity. I don't have any idea whether there's diversity. I may have to dismiss this unless you can show me you've got diversity. (Tr. 1/24/83, p. 19, line 22 to p. 20, line 2).

The court could have dismissed the Britton complaint for lack of jurisdiction under F.R.Civ.P. 12(h)(3), with leave to plead over. It chose instead to stay the matter except for discovery on jurisdiction so that the fundamental question could have been resolved. But whether dismissed without prejudice or stayed for discovery on the jurisdictional question, the fact remains that the question is one that federal courts are to get answered first before a lot of time and money is spent on merits that the court cannot decide if it has no jurisdiction.

Only last year, this court had occasion to dismiss a diversity suit which had been through two trials and an appeal with remand for a third trial. It was only as the third trial was about to begin that the court noticed a special defense by one defendant that there was no diversity between it and the plaintiff. When the lawyers were asked to check the state of incorporation and principal place of business of the corporate parties, it became painfully obvious that not only could the court not hear the third trial, but the first two, as well as the appeal, had been fruitless exercise. See, *Inventive Music v. Cohen, et als.*, 564 F.Supp. 914 (D.N.J.1982), and the cases cited in it.

The same thing can happen on a case removed from state court, such as *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (CA–3, 1974), cert. den. 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94. In that case there was no diversity but the case was removed on a supposed federal question. It turned out, after trial and decision, that the plaintiff had limited his complaint to a state law claim, even though he might have asserted a federal claim but did not. The entire trial was wasted and the case was returned to the district for remand to the state court.

It is awareness of situations like those in the examples that lead trial judges to be alert to jurisdictional defects, to search for them at an early stage, and to insist that questions of jurisdiction be resolved first before spending time and effort on the merits. One example is in *Nolan v. Otis Elevator Co.*, 560 F.Supp. 119 (D–N.J. 1982).

Plaintiff's attorney has moved for leave to file an amended complaint, and his letter after reading the previously unfiled transcript evidently satisfies him that he can show the existence of diversity jurisdiction by that amended complaint.

Under the circumstances the court concluded that the stay for discovery should be vacated and the mechanism laid down for the further processing of the case. The open abstention motion is denied, but without prejudice to renewal after all the pleadings are in. Not having had the transcript until after argument on June 13th, the court does not feel it would be fair to deny any other party, including those to be brought in for the first time, the opportunity to make an application if they choose to with the benefit of the full record. Hopefully, the parties have ordered the transcript of June 13th, so that it will be available to all parties as well as the court.