**GLASS MOLDERS, POTTERY, PLASTICS AND ALLIED WORKERS INTERNATIONAL UNION, AFL–CIO, et al., Plaintiffs,**

v.

**WICKES COMPANIES, INC., Defendant.**

Civ. A. No. 88–3578.

United States District Court, D. New Jersey.

Feb. 28, 1989.

Allan Kanner (argued), Vineland, N.J. and Robert F. O'Brien, Justin T. Loughry (argued), Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for plaintiffs.

John P. Hauch, Jr. (argued), Archer & Greiner, Haddonfield, N.J., and James N. Adler, Irell & Manell, Los Angeles, Cal., for defendant Wickes Companies, Inc.

GERRY, Chief Judge.

INTRODUCTION

Plaintiffs Glass Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, ("GMP"), GMP Local 252, and eight present and former members of the Local and present and former employees of Owens–Corning Fiberglass Corporation ("OCF"), bring this action on behalf of themselves and others similarly situated against defendant Wickes Company, Inc. ("Wickes"). Plaintiffs claim they are the economic casualties of a corporate takeover battle between Wickes and OCF, a battle which left OCF "victorious" but saddled with a two billion dollar debt, which it

serviced in part by laying off thousands of workers, including some of the individually named plaintiffs here.

Plaintiffs' complaint, alleging state law claims of tortious interference with prospective economic advantage and negligence, was brought originally in New Jersey Superior Court. On August 12, 1988, defendants removed the case to this court, contending that plaintiffs' allegations implicate federal law, specifically the Hart–Scott–Rodino Act, 15 U.S.C. § 18a, and § 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (the Williams Act) *et seq.*, and that plaintiffs' claims "sound in and may be based upon [the] breach or enforcement of a collective bargaining agreement" and therefore are governed by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Presently before the court is plaintiff's motion to remand the case to state court and defendant's motion to dismiss the case. Since plaintiffs' motion challenges this court's jurisdiction over the matter, we must reach the remand issue first.

FACTUAL BACKGROUND AND LEGAL ANALYSIS

This matter is governed by well-settled principles of law. As the United States Court of Appeals for the Third Circuit has put it, "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985). Removal jurisdiction also "raises significant federalism concerns," which further counsels a cautious approach to its exercise. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988), *citing Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). It is the burden of the party seeking removal to show the ex-istence of federal jurisdiction, and "the defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal." *Abels*, 770 F.2d at 29.

According to the plaintiffs' complaint, Wickes, a diversified conglomerate, emerged from the protection of Chapter 11 in 1986 and commenced a hostile takeover attempt of OCF. In July, 1986, Wickes decided to put OCF "in play" by acquiring voting securities of OCF. Through its own purchase and through purchase by others on its behalf, Wickes acquired an aggregate total amount of voting securities in excess of $15 million by August 5, 1986. On August 6, 1986 Wickes announced its intention to acquire OCF; by September 2, 1986 Wickes had sold all interest in the target's stock, earning, according to plaintiffs' complaint, a profit of approximately $30 million.

In the meantime OCF, attempting to fight off the Wickes challenge, instituted a recapitalization plan that left it with a $2 billion debt. To raise cash to service this debt, OCF "retreated to its cyclically mature markets in autos and housing, while closing various operations and discontinuing further investments in developing new products and processes." Plaintiffs' Complaint ¶ 21. This resulted in worker layoffs, and in loss of dues income to the plaintiff unions.

Plaintiffs' theory, as evidenced in their complaint, is that Wickes' takeover attempt constituted tortious interference with a prospective economic advantage plaintiffs anticipated in their employment relationship with OCF. Wickes' actions were wrongful, according to plaintiffs, because they were "neither generally acceptable nor sanctioned by common morality or applicable legal rules, including but not limited to those norms set forth in the Williams Act and Hart–Scott–Rodino." *Id.* at 42 [1].

---

**1.** Plaintiffs contend that Wickes' purchase of the OCF voting securities violated both the Hart–Scott–Rodino Acts' requirements of reporting to the Justice Department and delaying acquisition of certain amounts of stock until the expiration of a legally prescribed waiting period, and the

Williams Act (§ 13(d) of the Securities Exchange Act of 1934) by illicitly concealing certain purchases of OCF stock by others in Wickes' behalf. The complaint reveals that on March 23, 1988, Wickes paid a $300,000 penalty in response to a complaint filed by the Justice

Defendant Wickes argues that federal jurisdiction obtains in this case because plaintiffs' cause of action necessarily implicates federal law. Defendant argues with great vigor in both its motion to dismiss and its opposition to remand that plaintiffs' claim are preempted by either the Williams Act or by § 301 of the LMRA. At the very least, argues defendant, plaintiffs' tort claims "arise under" federal law, in that they depend upon "a predicate determination of whether Wickes violated specified federal securities laws" or "whether OCF breached the collective bargaining agreement between the plaintiffs and OCF when it laid off the plaintiffs." Defendant's Memorandum in Opposition to Plaintiffs' Motion to Remand at 1. Independent of these arguments, Wickes contends that diversity jurisdiction exists here because the only non-diverse party, the international union, is in fact fraudulently joined and must be disregarded. We discuss these asserted bases for our jurisdiction *seriatim*.

## I. *Jurisdiction Based on Federal Preemption*

 Any attempt to found federal jurisdiction upon an argument that the case implicates a federal question, either via preemption or an "arising under" analysis, must overcome the substantial hurdle of the "well-pleaded complaint rule," which requires a federal court to decline jurisdiction unless it appears from plaintiffs' complaint that an allegation necessary to state a claim raises a federal issue, irrespective of whether a federal defense to that claim is a possibility or even a certainty. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This is, in the Supreme Court's words, "a powerful doctrine . . . which as a practical matter severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court . . ." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.

2d 420 (1983). Reliance on the well-pleaded complaint means that a claim of federal preemption, being generally defensive in nature, is almost always insufficient to confer federal jurisdiction. There is but one extremely narrow exception: when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpiller, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Recently, the Third Circuit discussed the requirements for finding that a federal statute "completely preempts" a state law cause of action. In *Railway Labor Executives Assoc. (R.L.E.A.) v. Pittsburgh & Lake Erie Railroad Co.*, 858 F.2d 936 (3d Cir.1988), the court held that in order to determine whether a state law cause of action can be recharacterized as a federal claim under the complete preemption doctrine,

> the federal court must first ask whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls. . . . If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court.
>
> Even if there is a civil enforcement provision and the plaintiff's state claim falls within it, the federal court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law. . . . If there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no "complete preemption." If there is no such intent, the district court need not and should not

---

Department alleging failure by Wickes to comply with these notification requirements in its

OCF acquisition. Plaintiff's Complaint at ¶ 23.

address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand.

858 F.2d at 942 (citation omitted) (footnotes omitted).

■ Under this analysis, as defendant readily acknowledges, the Williams Act cannot completely preempt plaintiffs' cause of action. The Williams Act has been held to contain an implied right of action for shareholders, *Jacobs v. Pabst Brewing Co.,* 549 F.Supp. 1050, 1054–1062 (D.Del.), *aff'd per mem.,* 707 F.2d 1392 (3d Cir.1982), but it "creates no federal cause of action vindicating the same interest the plaintiffs' state cause of action seeks to vindicate." *R.L.E.A.* at 942. Nor are we aware of any clear indicia in the Williams Act of Congressional intent to permit removal of actions such as asserted here.

■ Similarly, we do not believe that § 301 of the LMRA operates to preempt completely plaintiffs' state law cause of action. In *Caterpillar, Inc. v. Williams, supra,* the Supreme Court held that complete preemption under § 301 is only possible where the plaintiff's claim is founded directly on rights created by a collective bargaining agreement or where plaintiff's complaint is "substantially dependent upon interpretation of the collective bargaining agreement." 107 S.Ct. at 2431.

In this case, it is true that plaintiffs were parties to a collective bargaining agreement with OCF. However, the right they are asserting under state law—the expectancy of prospective economic advantage—is not a right *created* by the contract. Indeed, apart from protecting employees from arbitrary discharge or establishing a system of seniority to govern layoffs in their eventuality, the typical collective bargaining agreement guarantees no independent right of job security, much less any expectancy of prospective economic gain.

For like reasons, there is nothing in plaintiffs' complaint that depends upon an interpretation of the GMP–OCF contract. Plaintiffs' claims are focused entirely upon the alleged "wrongfulness" of Wickes' conduct in the course of the takeover bid. The rights and duties created by the contract's provisions are simply not relevant to these claims. Moreover, as the Third Circuit observed in *Zippertubing Co. v. Teleflex, Inc.,* 757 F.2d 1401, 1406–07 (1985), the New Jersey tort of interference with prospective economic advantage arose in the context of employee-at-will terminations induced by a third party; "[c]onsistent with its roots in cases dealing with at-will employment, ... the cause of action in New Jersey does not depend upon the existence of a legally enforceable relationship." Therefore, we cannot say that plaintiffs' complaint is "substantially dependent" upon the collective bargaining agreement for complete preemption purposes.

We must emphasize here that in holding that neither the Williams Act nor § 301 effects a complete federal displacement of plaintiffs' state tort claims, we intimate no view as to whether these claims are, in fact, preempted these or other federal statutes. We merely find that we cannot premise federal jurisdiction upon defendant's preemption arguments. We assure defendant that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them ..." *R.L. E.A., supra,* 858 F.2d at 942.

## II. *"Arising Under" Jurisdiction*

As stated previously, the well-pleaded complaint rule places significant barriers upon removal where a plaintiff's causes of action are couched in state law. "With the exception of state actions completely displaced by federal law, the plaintiff is generally 'master to decide what law he will rely upon,' and he 'may avoid federal jurisdiction by exclusive reliance on state law.'" *Willy v. Coastal Corp., supra,* 855 F.2d at 1167, *quoting The Fair v. Kohler Die & Speciality Co.,* 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913) and *Caterpillar, Inc. v. Williams, supra.* However, even where state law creates plaintiffs' cause of action, a case may still "arise under" federal law "if a well-pleaded complaint established

that [plaintiff's] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board v. Laborers Vacation Trust, supra,* 463 U.S. at 13, 103 S.Ct. at 2848.

■ In this case, defendant points out that plaintiffs' tortious interference claim relies on federal law insofar as it refers to defendant's alleged violations of the Williams and Hart–Scott–Rodino Acts as evidence of the wrongfulness of Wickes' takeover strategy. However, the Supreme Court has consistently reminded the courts of the "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3235, 92 L.Ed.2d 650 (1986); *Gully v. First Nat'l Bank,* 299 U.S. 109, 115, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). Rather, where, as here, the " 'law that creates the cause of action' is state law ... federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Board, supra,* 463 U.S. at 13, 103 S.Ct. at 2848. Defendant argues that the allegation that Wickes violated federal securities law forms a "necessary element" of plaintiffs tortious interference claim. Alternatively, defendant contends that plaintiffs' cause of action is "really" a claim under § 301. We disagree with both propositions.

Paragraph 42 of plaintiffs' complaint sets forth plaintiffs' allegation of tortious interference with prospective economic advantage. It reads, "the facts of this specific case reveal a hostile action by Wickes that is neither generally acceptable nor sanctioned by common morality or applicable legal rules, *including but not limited*

*to* those norms set forth in the Williams Act and Hart–Scott–Rodino." (emphasis added). The wording itself belies any argument that plaintiffs are placing exclusive reliance on violations of federal securities law as necessary predicates for proving "wrongful conduct" on the part of Wickes. And this wording, seemingly ambiguous,[2] actually follows faithfully the New Jersey law of tortious interference.

In *Sustick v. Slatina,* 48 N.J.Super. 134, 137 A.2d 54 (App.Div.1957) the Appellate Division noted that:

a degree of generality in the criteria which will suffice to spell out liability in any given case of this kind is unavoidable. The essence of the cases in this field is that in adjudging whether what the defendant has done is actionable, i.e., not done in the exercise of an equal or superior right, the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." ... In other words, was the interference by defendant "sanctioned by the 'rules of the game.' " ... There can be no tighter test of liability in this area than that of.,the common conception of what is right and just dealing under the circumstances.

48 N.J.Super. at 144, 137 A.2d 54 [citation omitted]. And in *Fitt v. Schneidewind Realty Corp.,* 81 N.J.Super. 497, 504, 196 A.2d 26 (Law Div.1963) the court defined a "wrongful act" for the purposes of establishing liability for tortious interference as

one which in the ordinary course of events will infringe upon the rights of another to his damage, or one which is done with the purpose of benefiting the acting party at the other's expense and is not done in the exercise of an equal or superior right. The mere doing of an act which is damaging to another and to the actor's benefit is wrongful and not within the "rules of the game."

---

**2.** Ambiguity in plaintiffs' pleadings is not fatal to their motion to remand. To the contrary, as Judge Higginbotham pointed out in *Toanone v. Williams,* 405 F.Supp. 36, (E.D.Pa.1975), " 'all doubts arising from defective, ambiguous and inartful pleadings should be resolved in favor of

the retention of state court jurisdiction.' " 405 F.Supp. at 38, *quoting Greenshields v. Warren Petroleum Corp.,* 248 F.2d 61, 65 (10th Cir.) *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957).

As these passages indicate, the tort is defined in exceedingly broad terms, and the parameters of wrongful conduct may range far. We therefore think it theoretically possible for the plaintiffs in this case to assemble the elements of tortious interference without proving that Wickes violated the enumerated securities laws. Thus, the alleged transgressions of the Williams and Hart–Scott–Rodino Acts cannot be considered "necessary" elements of plaintiffs' state tort claim.

Rather than being employed as vital components to their cause of action, plaintiffs' use of the Williams Act and Hart–Scott–Rodino can more accurately be viewed as setting out benchmarks to delimit the tortious interference claim. This distinction is of paramount importance to the jurisdictional issue, as the Supreme Court demonstrated in *Merrell Dow Pharmaceuticals*. In that case, the court reconciled *Smith v. Kansas City Title and Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), in which the court found federal jurisdiction in a state law cause of action, with *Moore v. Chesapeake & Ohio R. Co.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), in which it declined to find federal jurisdiction, by focusing on the "differences in the nature of the federal issues at stake." *Merrell Dow*, 478 U.S. at 814–815, n. 12, 106 S.Ct. at 3236, n. 12. The court explained that in *Smith* the state action challenged the very constitutionality "of an important federal statute," whereas in *Moore*, the alleged "violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of

the action." *Id.* at 815, n. 12, 106 S.Ct. at 3236, n. 12.

On the continuum between *Smith* and *Moore*, it is not difficult to perceive where this case falls. The presence of the Williams Act and Hart–Scott–Rodino Act in plaintiffs' complaint does not mean that the cause of action arises under federal law.[3]

■ We likewise are unpersuaded that plaintiffs' claims "are in reality" claims under § 301 of the LMRA. Defendant's Suppl.Mem. at 2. Defendant advances this argument by pointing to the preamble of plaintiffs' complaint, in which plaintiffs assert that Wickes "unlawfully and without justification interfered with the *contracts* and prospective economic advantages enjoyed by the herein described class of employees and former employees of OCF." Plaintiffs' Complaint at ¶ 1. (emphasis added). Despite the fact that plaintiffs' "contracts" are nowhere else mentioned in the complaint, defendant fixates on this prefatory language as proof that "the essence of the plaintiffs' claim is that Wickes tortiously interfered with the collective bargaining agreements which governed their relationship with OCF", Defendant's Suppl. Mem. at 3, and that therefore the claim is wholly cognizable under federal labor law.

As we have noted above, however, plaintiffs' tortious interference cause of action simply does not depend on the existence of the contractual relationship. *See Zippertubing, supra,* 757 F.2d at 1407. At best, defendant's argument here demonstrates that plaintiffs make reference to their

---

3. At oral argument, the plaintiffs and the defendant sparred over the meaning of *Merrell Dow*'s holding that "arising under" jurisdiction is only available when the federal statute at issue contains a private cause of action. Plaintiffs interpreted this as a requirement that the statute contain a private remedy for the very wrong plaintiffs seek to redress in their state law claim, while defendant read *Merrell Dow* more broadly, asserting that the case only holds that *some* private right of action need be available to *some* litigant under the federal law for that law to confer federal jurisdiction over a state law created cause of action. Other courts seem to interpret *Merrell Dow* as do plaintiffs, *see e.g., Willy v. Coastal Corp.*, 855 F.2d 1160, 1163 (5th Cir.1988):

While *Merrell Dow* held that a private, federal remedy was a necessary predicate to determining that the presence of a federal element in a state-created cause of action resulted in that cause of action being one which arose under federal law, it did not hold that the presence of any private, federal remedy would in all instances suffice for that purpose.

Even if we were to accept defendant's version, we think the real import of *Merrell Dow* to the present case is its charge to the courts to examine the nature of the federal interest at stake to determine whether a state-law created cause of action that relies in part on federal law can "arise under" federal law for jurisdictional purposes.

rights under the collective bargaining agreement as simply one theory supporting their tortious interference claim, much like reference to alleged federal securities law violations is used as one way to establish "wrongful conduct". As the Supreme Court recently observed in *Christianson v. Colt Industries Operating Corp.,* — U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988):

> The well-pleaded complaint rule, however, focuses on claims, not theories, see *Franchise Tax Board,* 463 U.S. at 26 and n. 29 [103 S.Ct. at 2855 and n. 29]; *Gully,* 299 U.S. at 117 [57 S.Ct. at 99], and just because an element that is essential to a particular theory might be governed by federal ... law does not mean that the entire ... claim 'arises under' [federal] law.

108 S.Ct. at 2175–76.[4]

We therefore hold that plaintiffs' claim of tortious interference with prospective economic advantage does not arise under federal law for the purpose of federal jurisdiction.

### III. *Jurisdiction Based Upon Diversity of Citizenship*

■ Wickes' final argument for the maintenance of our jurisdiction in this case is that diversity of citizenship exists. To succeed here, defendants must remove the one non-diverse party, the International GMP, from the action. Defendant relies primarily on the "fraudulent joinder" doctrine, contending that the International "as a clear matter of state law" can assert no cause of action against Wickes.

As the United States Court of Appeals for the Fifth Circuit noted in *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983):

> The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

Wright & Miller state, "[a] party will be considered fraudulently joined when plaintiff has not stated a claim for relief or does not intend to secure a judgment against that defendant. But there need only be a possibility that a right to relief exists to avoid this conclusion ..." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3723 at 347, 350, 353–54.

In this case, the plaintiff International has stated a clear claim for relief—the loss of dues income of its members laid off by OCF under its recapitalization plan, allegedly due to Wickes' tortious takeover behavior—and the International certainly seems intent on pursuing this claim to judgment. Wickes contends that the International has no colorable ground to sue under a tortious interference theory because it cannot show the requisite causal link between defendant's actions and the union's loss of dues income. We think that to fully pursue this argument, the court would be forced to enter into the legal and factual thicket that comprises the merits of this case. This is not terrain upon which a court uncertain of its jurisdiction should tread. *See Green v. Amerada Hess Corp., supra,* 707 F.2d at 204 (A district court should not conduct a full scale hearing on the merits to determine the existence of fraudulent joinder.)

Therefore, in view of the authorities quoted above and in light of the sparseness of the present record, we cannot say with the assurance necessary to support a finding of fraudulent joinder that the plaintiff International has no possibility of obtaining relief on its state tort claim. Admittedly the International, like the rest of the plaintiffs, are attempting to place a new spin upon an exceedingly open-ended state law cause of action, and there may exist com-

---

**4.** Plaintiffs' claim is thus entirely distinguishable from *Wilkes–Barre Publishing Co. v. Newspaper Guild, Local 120,* 647 F.2d 372 (3d Cir. 1981) *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982), in which the Third Circuit held that a claim of tortious interference with a non-competition clause *contained in a collective bargaining agreement* arose under the federal common law of labor contracts.

pelling reasons of law and policy to bar the maintenance of this action. On the other hand, New Jersey courts have previously observed in cases brought under a tortious interference theory that "[t]he novelty of a specific occasion for application of a principle in this field is no reason for according it a chilly reception," *DiCristofaro v. Laurel Grove Memorial Park*, 43 N.J.Super. 244, 255, 128 A.2d 281 (App.Div.1978). Given the novelty of this state-law based cause of action, we think that decisions affecting its viability rest, quite properly, with the state courts. Plaintiffs' motion to remand is granted.

Because we cannot lay claim to jurisdiction in this case, either via federal question or diversity of citizenship, we are without competence to proceed to defendant's motion to dismiss.

A federal district court concluding lack of jurisdiction should apply its brakes, cease and desist the proceedings, and shun advisory opinions. To do otherwise would be in defiance of its jurisdictional fealty.

*Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir.1971). Defendant's motion will be dismissed as moot. Plaintiffs are directed to submit an appropriate form of order.