**NAZARETH CANDY COMPANY, LTD., Plaintiff,**

v.

**SHERWOOD GROUP, INC., Sherwood Foods, Inc., and Uziel Frydman, Defendants.**

**No. C–87–777–WS.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

April 8, 1988.

---

Robert W. Spearman and Jill B. Hickey, Raleigh, N.C., for plaintiff.

David C. Smith and James R. Hubbard, Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The parties briefed the issue and the matter is now ready for a ruling. After reviewing the briefs, the court denies the defendants' motion to dismiss for lack of subject matter jurisdiction.

### Procedural History

On November 4, 1987, Nazareth Candy Company, Ltd. (Nazareth) filed this complaint against the defendants Sherwood Group, Inc. (Sherwood Group), Sherwood Foods, Inc. (Sherwood Foods), and Uziel Frydman alleging that the defendants failed to pay for chocolate and candies ordered from Nazareth. Defendants moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (1987).

### Facts

Nazareth is a corporation organized and existing under the laws of Israel, with its principal place of business in Nazareth, Israel. Nazareth is a wholly-owned subsidiary of "Elite" Israel Chocolate & Sweets Manufacturing Company, Ltd., which is also a corporation organized and existing under the laws of Israel. Defendants Sherwood Group and Sherwood Foods are North Carolina corporations whose principal place of business is in Winston–Salem, North Carolina. Defendant Frydman is president of Sherwood Group and Sherwood Foods. He resides in Winston–Salem, North Carolina. Frydman was born in Israel, and he became a naturalized citizen of the United States in 1977. He claims both American and Israeli citizenship, and he travels to Israel on an Israeli passport.

A dispute arose between the parties regarding the purchase of chocolates and candies that plaintiff sold defendants. On October 15, 1982, the parties entered into an agreement giving the defendants the exclusive right to market, sell, and distribute plaintiff's goods. Sherwood Foods assumed all liabilities of Sherwood Group on July 28, 1983. Plaintiff claims that from February 1984 to the present, the defendants have repeatedly ordered chocolate from the plaintiff and that the defendants have repeatedly failed or refused to pay the plaintiff pursuant to the October agreement.

### Discussion

Title 28, United States Code, Section 1332(a) states in part:

§ 1332. Diversity of citizenship; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the

sum or value of $10,000, exclusive of interest and costs, and is between—

....

(2) Citizens of a State and citizens or subjects of a foreign state....

Courts and commentators refer to these sections of the statutes as alienage jurisdiction. Plaintiff alleges that it falls within 28 U.S.C. § 1332(a) because it is an alien corporation suing Frydman, an American citizen. It contends that the cases indicate this court should ignore Frydman's dual citizenship and find that complete diversity exists in this fact situation.

Defendants filed this motion alleging that this court lacks subject matter jurisdiction since Frydman's dual citizenship defeats diversity. The nature of dual citizenship in a diversity jurisdiction case is a question of first impression in this circuit. Only three courts have ruled on the question of dual citizenship and its effect on diversity jurisdiction. In *Aguirre v. Nagel*, 270 F.Supp. 535 (E.D.Mich.1967), the district court found jurisdiction under 28 U.S.C. § 1332(a)(2), where the plaintiff, an American citizen, a Michigan citizen, and a Mexican citizen because of her parents, sued a Michigan citizen for damages arising from an automobile accident. The *Aguirre* court determined that the plaintiff had Mexican citizenship which placed plaintiff within the literal meaning of that statute. Commentators heavily criticize the result in *Aguirre* because the result is inconsistent with the complete diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 287, 2 L.Ed. 435 (1806). J. Moore, Moore's Federal Practice ¶ 0.75[1.–1] (2d ed. 1987); C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3621 (2d ed. 1984).

In *Raphael v. Hertzberg*, 470 F.Supp. 984 (C.D.Cal.1979), the district court rejected the *Aguirre* result. It determined that it lacked subject matter jurisdiction where a plaintiff, a citizen of the United States, Britain, and California, sued California defendants for alleged breach of contract, tortious conduct, and breach of fiduciary duty. The *Raphael* court reasoned that "[w]hatever his status under British law, he is now a citizen of the United States." *Raphael*, 470 F.Supp. at 986.

The Court of Appeals for the Seventh Circuit in *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir.1980), affirmed the district court's dismissal for lack of subject matter jurisdiction. That court held that the plaintiff was not domiciled in a state of the United States, and, therefore, he did not comply with the requirements of 28 U.S.C. § 1332(a)(2). The *Sadat* plaintiff, a naturalized United States citizen and Egyptian citizen, sued citizens of Wisconsin and Connecticut. The issue in that case was whether a citizen with dual citizenship, who lacked a domicile in an American state, could sue under 28 U.S.C. § 1332(a). Plaintiff contended that he was an Egyptian citizen and he could sue defendants because of the alienage jurisdiction found in 28 U.S.C. § 1332(a)(2). The Seventh Circuit affirmed the district court's dismissal since "the plaintiff was not domiciled in the United States at the time his complaint was filed, and thus not a 'citizen of a state' within the meaning of 28 U.S.C. § 1332(a)(1)." *Sadat*, 615 F.2d at 1178.

In its discussion of dual citizenship, the *Sadat* court, like the *Raphael* court, determined that for the purposes of 28 U.S.C. § 1332(a), it would only recognize the American citizenship of the party claiming dual citizenship. That court only recognized the American citizenship for the purposes of diversity jurisdiction since the rationale behind alienage jurisdiction was not present in *Sadat*. First, the *Sadat* court applied the dominant nationality theory where courts analyze the citizen's conduct, residence, and his relationship in the countries in which he claims dual citizenship. Although, it found that Egypt still recognized the plaintiff as an Egyptian citizen, it held that his American citizenship defeated diversity jurisdiction since: (1) He retained his American passport, and he manifested his intent to return to the United States even though he worked in the Middle East. (2) He registered at the United States embassy in Cairo as a United States citizen. (3) He voted in the 1976 presidential election. *Sadat*, 615 F.2d at 1186.

Second, it determined that it would not allow plaintiff to use his dual nationality to gain access to the federal courts when the courts bar American citizens access where complete diversity is not present. It reasoned that such a result would give unfair control of the courts to citizens with dual citizenship, giving them the ability to select nationality at will to defeat or to gain access to the federal courts. As the *Sadat* court stated in dicta:

> Imagine, for example, a native-born American, born of Japanese parents, domiciled in the State of California, and now engaged in international trade. A dispute could arise in which an Australian customer seeks to sue the American for, say, breach of contract in a federal court in California. The native-born American possibly could claim Japanese citizenship by virtue of his parentage, ... as well as his status as a citizen of California and defeat the jurisdiction of the federal courts because of the absence of complete diversity. Arguably, cases such as this are precisely those in which a federal forum should be afforded the foreign litigant in the interest of preventing international friction.

*Sadat*, 615 F.2d at 1186.

This court agrees with the reasoning in *Sadat* and *Raphael*. Under the dominant nationality theory, Frydman would be an American citizen for the purposes of diversity jurisdiction. Although he travels to Israel on an Israeli passport, he has purchased a home in Winston–Salem, North Carolina where his family resides, and he operates his business in that city. Second, the court agrees with the *Raphael* court noting that he took an oath renouncing his allegiance to foreign states or sovereignties when he became an American citizen. 8 U.S.C. § 1448 (1987). Thus, his Israeli citizenship is irrelevant for the purposes of determining diversity jurisdiction.

The paramount reasons for alienage jurisdiction are present in this case. Congress passed 28 U.S.C. § 1332(a): "(1) to give protection to foreigners under treaties that states may fail to recognize; and (2) to prevent entanglements with other sovereigns that might ensue from failure to treat the legal controversies of aliens on a national level." *Sadat*, 615 F.2d at 1182. Nazareth may face severe prejudice in state court as a result of the violent events taking place on the West Bank between the Palestinians and the Israeli government.

The court disfavors Frydman's argument to defeat jurisdiction since that result would allow American citizens with dual citizenship to control subject matter jurisdiction in the federal courts. Congress did not intend for citizens with dual citizenship to have the power to defeat or to gain access to the federal courts based upon their selection of nationality.

Therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss is DENIED.