George S. LIAKAKOS

v.

CIGNA CORPORATION; CIGNA Worldwide, Incorporated; James T. Morone; Arnold A. Trillet J.J. Talarico; and Does 1–100, Inclusive.

Civ. A. No. 87–0390.

United States District Court,
E.D. Pennsylvania.

Nov. 23, 1988.

As Amended Nov. 23, 1988.

William B. Lytton, Robert J. LaRocca, Marion K. Littman, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for plaintiff.

Stephanie A. Middleton, Philadelphia, Pa., for defendants.

## OPINION

GAWTHROP, District Judge.

■ On August 16, 1988, it appearing that this court had diversity jurisdiction, I entered an order permitting further discovery to proceed. Upon further examination of the pertinent law and the facts of this case, I now, *sua sponte*,[1] vacate and modify my previous order as it relates to subject matter jurisdiction.

1. Lack of subject matter jurisdiction may be raised at any time by parties or by the court, *sua sponte*. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194, n. 2 (9th Cir.1988); *Veal v. Kerr–McGee Coal Corp.*, 682 F.Supp. 957, 960 (S.D.Ill. 1988); *Essington Metal Works, Inc. v. Retirement Plans of America, Inc.*, 609 F.Supp 1546, 1550 (E.D.Pa.1985).

2. CIGNA Corporation is likewise a Delaware Corporation, with its principal place of business

*Background*

Plaintiff, George S. Liakakos, is a Greek national and a naturalized citizen of the United States. In 1978, he became an employee of AFIA Worldwide (AFIA), working as a senior branch assistant in AFIA's Athens office. AFIA was later acquired by CIGNA Worldwide, Incorporated (CIGNA), a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.[2] In 1984, plaintiff was assigned to the position of Director, Loss Control in Athens. In 1985, CIGNA notified plaintiff that his employment would be terminated effective April 1, 1985. Plaintiff brought suit in the Superior Court of California for the County of Los Angeles on March 14, 1986. Eight months later, the case was removed to the United States District Court for the Central District of California, which transferred the case to the United States District Court for the Eastern District of Pennsylvania.

I. Does this court have subject matter jurisdiction under 28 U.S.C. § 1332(a)(2)?

Under 28 U.S.C. § 1332(a)(2), federal courts are vested with original jurisdiction in cases involving "citizens of a State and citizens or subjects of a foreign state." In my previous memorandum, I stated:

> In [his] affidavit, plaintiff states that he is both a naturalized United States citizen and a citizen of Greece. He also asserts that "[n]otwithstanding my United States citizenship, Greece always has considered and continues to consider me a Greek citizen." Since plaintiff is recognized as a Greek citizen, he has a diversity claim under 28 U.S.C. § 1332(a)(2)....

*Liakakos v. Cigna Corp.*, slip op. at 2–3, No. 87–390 (E.D.Pa. August 16, 1988) [1988 WL 85704].

in Philadelphia. Of the remaining defendants, Arnold A. Trillet and J.J. Talarico are citizens of New Jersey, and James T. Morone is a citizen of Pennsylvania. In his complaint, plaintiff states that the "true names and capacities of DOES 1–100 are unknown to the plaintiff ... Plaintiff will amend this complaint to insert said true names and capacities upon ascertainment." Plaintiff has not amended his complaint with respect to these individuals.

In *Aguirre v. Nagel,* 270 F.Supp. 535 (E.D.Mich.1967), the plaintiff, a minor, was injured when she was struck by defendant's automobile. Both the plaintiff and the defendant were citizens of Michigan. The plaintiff was, however, also a citizen of Mexico, by virtue of her parent's Mexican citizenship. The court ruled that because plaintiff was a Mexican citizen, it had subject matter jurisdiction under the literal meaning of 28 U.S.C. § 1332(a)(2).

The result in *Aguirre* has been criticized by most commentators, *see, e.g.,* Wright, Miller & Cooper, Federal Practice and Procedure § 3621 (2d ed. 1984), and the few cases that have ruled on the issue have refused to follow it in the case of naturalized Americans.[3] *See: Raphael v. Hertzberg,* 470 F.Supp. 984 (C.D.Cal.1979), *appeal dismissed,* 636 F.2d 1227 (9th Cir. 1980), *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980), *Nazareth Candy Co., Ltd. v. Sherwood Group, Inc.,* 683 F.Supp. 539 (M.D.N.C.1988). The reasoning behind these cases is as follows:

1. The purposes behind alienage jurisdiction are not present in the case of naturalized Americans. One of the major considerations that may have prompted this provision was the fear of "entanglements with other sovereigns that might ensue from failure to treat the legal controversies of aliens on a national level." *Iran Handicraft and Carpet Export Center v. Marjan Intern'l Corp.,* 655 F.Supp. 1275, 1277 (S.D.N.Y.1987), *quoting Chang v. Northwestern Memorial Hospital,* 506 F.Supp. 975, 977 n. 1 (N.D.Ill.1980). Where, however, the proponent of diversity jurisdiction is a United States citizen, "there is little reason to fear that a foreign government may be affronted by a decision adverse to that citizen, even if the American citizen also purports to be a citizen of that foreign nation." *Raphael v. Hertzberg, supra.,* 470 F.Supp. at 986.

2. Where the plaintiff is an American citizen, "the risk of bias in a state forum against the litigant because he is also a foreign national would appear less substan-

tial." *Sadat v. Mertes, supra.,* 615 F.2d at 1186, n. 13.

3. To permit dual citizens the right to use their prior citizenship to create or destroy diversity would give them an unfair advantage over other litigants.

Imagine, for example, a native-born American, born of Japanese parents, domiciled in the State of California, and now engaged in international trade. A dispute could arise in which an Australian customer seeks to sue the American for, say, breach of contract in a federal court in California. The native-born American possibly could claim Japanese citizenship by virtue of his parentage, ... as well as his status as a citizen of California and defeat the jurisdiction of the federal courts because of the absence of complete diversity. Arguably, cases as this are precisely those in which a federal forum should be afforded the foreign litigant in the interest of preventing international friction.

*Sadat,* 615 F.2d at 1186 (citation omitted).

4. To permit naturalized Americans to use their prior nationality for purposes of diversity would be incompatible with the oath they took upon becoming citizens, wherein they renounced allegiance to foreign states or sovereignties. *See: Nazareth Candy Company v. Sherwood Group, Inc., supra.,* 683 F.Supp. at 542.

■ I note that the first and second reasons are not entirely applicable to the case at bar. Although a foreign country might ascribe little importance to one of its citizens who has become naturalized and resides in the United States, it might attach greater importance to his case where the naturalized citizen has returned to the country of his origins. Furthermore, in this case, there may indeed by a greater possibility of prejudice, since a jury might assume that because plaintiff was born in Greece, and resides there, he is a Greek national. Nevertheless, I conclude that these concerns are outweighed by the third and fourth factors. To permit a dual na-

---

**3.** *Aguirre* has only been followed in one case, in the context of a foreign citizen holding a United States "green card." *Robinson v. Anastasiou,* 339 F.Supp. 472 (S.D.Tex.1972).

tional to retain his previous citizenship for purposes of diversity jurisdiction would tend to make his oath of allegiance meaningless, letting him create, or destroy, jurisdiction to a greater degree than the statute contemplates. I also note that the plaintiff has taken no steps to renounce his United States citizenship, and indeed considers himself a Californian citizen. *See:* Plaintiff's affidavit ¶ 9. *See also: Sadat,* 615 F.2d at 1188 (Plaintiff's "actions subsequent to his naturalization evince his resolve to remain a U.S. citizen despite his extended stay abroad.")

Accordingly, I vacate that portion of my previous decision, wherein I found that plaintiff could state a diversity claim under § 1332(a)(2).

II. Does this court have subject matter jurisdiction under 28 U.S.C. § 1332(a)(1)?

Section 1332(a)(1), 28 U.S.C. § 1332(a)(1) gives the federal courts original jurisdiction over "citizens of different states." "[D]iversity of citizenship must be shown to have existed at the time of commencement of the action in state court and at the time of the filing of the petition for removal." *Kerstetter v. Ohio Casualty Insurance Co.,* 496 F.Supp. 1305, 1307 (E.D.Pa. 1980). For diversity to exist, plaintiff must be shown to have been not only an American citizen, but a citizen of a particular state. *See: Van Der Schelling v. U.S. News & World Report,* 213 F.Supp. 756, 762 (E.D.Pa.), *aff'd* 324 F.2d 956 (3d Cir. 1963), *cert. denied,* 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964) (American domiciled abroad not a state citizen for purposes of § 1332(a)(1)).

State citizenship is equated with domicile. *Williamson v. Ostenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *S.S. Dadzie v. Leslie,* 550 F.Supp. 77, 79, n. 3 (E.D.Pa.1982); "A person's domicile is that place where he has his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Michelson v. Exxon Research and Engineering Co.,* 578 F.Supp. 289, 290 (W.D.Pa.), *aff'd* 745 F.2d 47 (3d Cir.1984).

"[C]itizenship is not necessarily lost by protracted absence from home, where the intention to return remains." *Butler v. Pollard,* 482 F.Supp. 847, 851 (E.D.Okl. 1979). Similarly, absence from one's domicile because of overseas employment does not constitute a change of domicile. *Maple Island Farm v. Bitterling,* 196 F.2d 55, 58 (8th Cir.), *cert. denied,* 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952); *White v. All America Cable & Radio, Inc.,* 642 F.Supp. 69, 72 (D.Puerto Rico 1986); *Bell v. Bell,* 326 Pa.Super. 237, 473 A.2d 1069, 1077 (1984).

■ For a change in domicile to occur, the person whose citizenship is at issue must reside in the new domicile and "have no fixed and definite intent to return and make [his] home where [he was] formerly domiciled" *District of Columbia v. Murphy,* 314 U.S. 441, 454–55, 62 S.Ct. 303, 309, 86 L.Ed. 329 (1941) (footnote omitted). *See also: Lew v. Moss,* 797 F.2d 747, 749–750 (9th Cir.1986); *Holmes v. Sopuch,* 639 F.2d 431, 433 (8th Cir.1981). There is a presumption in favor of the old domicile, *Lange v. Penn Mutual Life Insurance Co.,* 843 F.2d 1175, 1179 (9th Cir.1988), and the party asserting a change in domicile must do so by clear and convincing evidence. *Avins v. Hannum,* 497 F.Supp. 930, 936 (E.D.Pa.1980); *Herzog v. Herzog,* 333 F.Supp. 477 (W.D.Pa.1971). "More evidence is required to ... establish a change of domicile from one nation to another than from one state to another...." *Maple Island Farm v. Bitterling, supra.,* 196 F.2d at 59.

■ The burden of persuasion as to diversity jurisdiction remains at all times on the proponent of jurisdiction. The effect of the presumption of prior domicile does not change the burden of proof, but merely shifts the burden of production onto the party attacking jurisdiction. "Once the attacker comes forward with evidence that the domicile has changed, the burden of production shifts back to the party asserting jurisdiction. That party has the burden of persuasion throughout to establish by a preponderance of evidence that the claimed diverse domicile has not been changed."

*St. Onge v. McNeilus Truck and Mfg., Inc.*, 645 F.Supp. 280, 282 (D.Minn.1986).

A party's domicile may be determined by a number of factors, including: "voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, ... driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d at 750.

■ Plaintiff, by way of affidavit, has stated that he was employed with CIGNA with the understanding that he would return to the United States; that during 1986 he returned to this California to look for employment, but was unsuccessful in his attempt; that he "continued to own and maintain his home in California and to maintain [his] bank account, [his] voter registration and driver's license there and to pay California taxes as before...." Plaintiff's Affidavit, ¶ 8. Plaintiff also states that as of March 14, 1986, the date of the suit, he intended to move his family back to California "as soon as I could find a job there." *Id.*

Defendants, for their part, have produced an application for employment, dated March 11, 1986, from Mr. Liakakos an international manufacturing company, located in Athens, Greece.

In *Sadat v. Mertes, supra.*, the plaintiff, one Moheb A.H. al Sadat, had taken an overseas job which required him to relocate to Beirut, Lebanon. After the plaintiff's employment was terminated, the company agreed to pay the cost of transporting Mr. Sadat and his family from Lebanon back to the United States. The plaintiff, however, did not return to the United States, but left for Alexandria, Egypt, where he registered as a permanent resident. In his affidavit in opposition to the defendant's motion to dismiss, he stated that he "owns his home in Cairo, Egypt and considers himself a resident of Egypt ... [and] maintains said home in Cairo, Egypt...." Based upon this evidence, the Seventh Circuit found that Mr. Sadat was domiciled abroad, and therefore was not a state citizen for purposes of 28 U.S.C. § 1332(a)(1). *Sadat*, 615 F.2d at 1181–82.

In this case, by contrast, plaintiff never purchased property in Greece, but rented an apartment there, on a yearly basis. Plaintiff's affidavit, ¶ 4. He continued to pay California taxes, and maintained his bank account, voter registration, and driver's license. At the conclusion of his employment with CIGNA, he returned to California where he searched, unsuccessfully, for employment. This case is, therefore, distinguishable from *Sadat.*

Although plaintiff, prior to the commencement of this action, wrote a letter to a Greek company, inquiring about employment possibilities, he also went to the United States during this same time, where he spent three months looking for employment in California. Accordingly, the application to the Greek company does not constitute clear and convincing evidence that plaintiff had acquired a new domicile in Greece.

Based on the evidence before me, I find that at the time this suit was commenced and removed to federal court, plaintiff had the intent to remain a Californian domiciliary; consequently, this court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2).