T. Jennifer VAIL, Peter Tsairis, Aphrodite Tsairis and Peter Dyatrakis, Plaintiffs,

v.

PAN AM CORPORATION, Pan American World Airways, Inc., Pan American World Services, Inc.; Alert Management Systems, Inc.; C. Edward Acker; Thomas G. Plaskett; Martin R. Shugrue; John Doe I–X, Fictitious Defendants; Richard Roe XI–XX, Fictitious Defendants; James Doe I–X, Fictitious Defendants; James Doe XI–XX, Fictitious Defendants; Robert Roes I–X, Fictitious Defendants; and Robert Roes XI–XX, Fictitious Defendants, Defendants.

Civ. A. No. 90–1684.

United States District Court, D. New Jersey.

Nov. 27, 1990.

Richard A. Grossman, Grossman & Kruttschnitt, Toms River, N.J., for plaintiffs.

James M. Shaughnessy, Windels, Marz, Davies & Ives, Morristown, N.J., for defendants Pan Am Corp., Alert Management Systems, and Thomas G. Plaskett.

## OPINION

LECHNER, District Judge.

This matter concerns the motion for remand ("Motion for Remand") by plaintiffs T. Jennifer Vail ("Vail"), Peter Tsairis and Aphrodite Tsairis (the "Tsairis Plaintiffs") and Peter Yatrakis ("Yatrakis")[1] (collectively, the "Plaintiffs") to New Jersey Superior Court of their action against Pan Am Corporation ("Pan Am"), Pan American World Airways, Inc. ("PAWA"), Pan American World Services, Inc. ("PAWS"), Alert Management Systems, Inc. ("Alert"), C. Edward Acker ("Acker"), Thomas G. Plaskett ("Plaskett"), Martin R. Shrugue ("Shrugue"), and a number of fictitious defendants (the "Fictitious Defendants") (collectively, the "Defendants") (the Plaintiffs and the Defendants are collectively referred to as the "Parties").

The court additionally raised with the parties *sua sponte* the question of whether transfer of the action under 28 U.S.C. § 1404(a) from the District of New Jersey to the Eastern District of New York is appropriate. The Parties were asked to submit briefs on this question and both did so.

The Plaintiffs' Motion for Remand to New Jersey Superior Court is granted; the transfer issue is therefore moot.[2]

---

1. Peter Yatrakis was incorrectly named in the Complaint and Amended Complaint as "Peter Dyatrakis." *See* Yatrakis Cert., ¶ 1.

2. In support of its Motion for Remand, the Plaintiffs submitted: the Brief in Support of Motion for Remand (the "Remand Brief"); the 15 May 1990 order transferring the action from the District of New Jersey to the Eastern District of New York (the "15 May 1990 Order"), attached as Exhibit A to the Remand Brief; the 26 April 1990 letter from Thomas J. Heavey, Esq. ("Heavey"), counsel for the Plaintiffs, to Elizabeth A. Bryson, Esq. ("Bryson"), counsel for the Defendants (the "26 April 1990 Heavey Letter to Bryson"), attached as Exhibit B to the Remand Brief; the 20 April 1990 letter from Bryson to Heavey (the "20 April 1990 Bryson Letter to

### Facts

On 19 December 1989 the Tsairis Plaintiffs filed a complaint in a separate action in the United States district court for the District of New Jersey. *See* 19 December 1989 Complaint. The 19 December 1989 Complaint alleged diversity and federal question jurisdiction. *Id.* at 1. The Tsairis Plaintiffs are the parents of Alexia Kathryn Tsairis ("Alexia Tsairis"), who died on 21 December 1989 in the crash of Pan Am Flight #103 in Lockerbie, Scotland. *Id.* at 3–5. The 19 December 1989 Complaint was brought against PAWA, PAWS, Alert and fictitious defendants ABC Manufacturing Corporation, JKL Security Corporation and others for the alleged wrongful death of Alexia Tsairis under theories including strict liability and negligence.

The action brought by the 19 December 1989 Complaint was transferred from the District of New Jersey to the Eastern District of New York by the Judicial Panel on Multidistrict Litigation on 5 February 1990 pursuant to 28 U.S.C. § 1407. *See* 5 February 1990 Order. The 5 February 1990 Order noted that more than sixty-five actions were consolidated for pre-trial proceedings pursuant to section 1407 in the Eastern District of New York and had been assigned to the Honorable Thomas C. Platt, Jr. *Id.*

The Plaintiffs initiated the present action by filing the Complaint on 26 March 1990 in New Jersey Superior Court and by filing the Amended Complaint on 12 April 1990. Count I of the Amended Complaint alleges the Defendants committed fraud by representing to the public that a far-reaching program of airport and airplane security (the "Program") was to be implemented for passengers and by not implementing the Program. Count II repeats the allegations of Count I under a theory of Consumer Fraud. Count III, for Breach of Contract, alleges the Defendants charged passengers a surcharge of $5.00 in return for the Program but did not implement the Program. Count IV contains class action allegations of a class consisting of purchasers of PAWA airline tickets from 1986 to 31 December 1989.

Both the Complaint and the Amended Complaint state the Tsairis Plaintiffs are residents of the State of New Jersey, that Vail is a resident of Delaware and that Yatrakis is a resident of New York. Amended Complaint, ¶¶ 1–2, 4. They fur-

---

Heavey"), attached as Exhibit C to the Remand Brief; the 20 March 1990 letter from Edwin A. Hartung, Esq. to Judge Dickinson R. Debevoise (the "20 March 1990 Hartung Letter to Judge Debevoise"), attached as Exhibit D to the Remand Brief; the Warsaw Convention, 49 U.S.C.App. § 1502 note, attached as Exhibit E to the Remand Brief; and the 24 July 1990 letter-brief (the "24 July 1990 Letter–Brief").

In opposition to the Remand Motion, the Defendants submitted the Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand the Action (the "Remand Opposition").

In support of transfer of the action from the District of New Jersey to the Eastern District of New York, the Defendants submitted the Defendants Memorandum of Law Regarding the Change of Venue of this Action (the "Transfer Brief").

In opposition to transfer of the action from the District of New Jersey to the Eastern District of New York, the Plaintiffs submitted: the Memorandum of Law with Respect to Transfer of Venue (the "Transfer Opposition"); the Warsaw Convention, 49 U.S.C. § 1502 note, attached as Exhibit A to the Transfer Opposition; the 15 May 1990 Order, attached as Exhibit B to the Transfer Opposition.

Also relevant to disposition of this matter is the Certification and Amended Certification of T. Jennifer Vail (the "Vail Cert." and "Vail Amended Cert.", respectively); the 12 September 1990 order returning the action from the Eastern District of New York to the District of New Jersey (the "12 September 1990 Order"); the Defendants' Notice of Removal Pursuant to 28 U.S.C. § 1441 *et seq.* (the "Notice of Removal"); the 19 December 1990 complaint (the "19 December 1990 Complaint"), attached as Exhibit A to the Notice of Removal; the 5 February 1990 order of the Judicial Panel on Multidistrict Litigation transferring the action initiated by the 19 December 1990 Complaint from the District of New Jersey to the Eastern District of New York (the "5 February 1990 Order"), attached as Exhibit B to the Notice of Removal; the 26 March 1990 complaint (the "Complaint"), attached as Exhibit C to the Notice of Removal; the Notice to Take Oral Deposition, attached as Exhibit D to the Notice of Removal; the 11 April 1990 letter from Heavey to Christina Smith, Esq., counsel for the Defendants (the "11 April 1990 Heavey Letter to Smith"), attached as Exhibit E to the Notice of Removal; the 12 April 1990 First Amended Complaint (the "Amended Complaint"), attached as Exhibit F to the Notice of Removal; and the Certification of Peter Yatrakis (the "Yatrakis Cert.")

ther contend Pan Am is a Delaware Corporation having its principal place of business in New York, that PAWA and PAWS are wholly owned by Pan Am, and that Alert is a Florida corporation and wholly owned by Pan Am. Amended Complaint, ¶¶ 5–8. They make no allegations as to the state of residence of Acker, Plaskett, Shugrue or the Fictitious Defendants. *See* Amended Complaint, ¶¶ 9–19.

On or around 11 April 1990 the Defendants noticed the deposition of Vail in order to obtain data as to her state of citizenship. *See* Notice to Take Oral Deposition. The Plaintiffs refused to produce Vail for deposition, contending that the noticing firm had never appeared in the action and was therefore not recognized by the Plaintiffs as representing any defendant. *See* 11 April 1990 Heavey Letter to Smith. It appears the Plaintiffs subsequently agreed to produce Vail but then canceled her deposition the business day before it was scheduled. *See* 20. April 1990 Bryson Letter to Heavey. Soon thereafter, the Plaintiffs informed the Defendants they would not agree to produce Vail for deposition as to

her state of citizenship because that issue was not relevant to the state court proceedings and because it was probable she would be produced at a later time for deposition on the substance of her claims. *See* 26 April 1990 Heavey Letter to Bryson.

On 25 April 1990, the Defendants removed the action from the New Jersey Superior Court to this court pursuant to 28 U.S.C. § 1441.[3] The Defendants alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332[4] on the ground that the Plaintiffs did not allege the citizenship of each plaintiff and therefore did not allege that each plaintiff was a citizen of a different state than each Defendant. *See* Notice of Removal, ¶ 16. They further alleged the Tsairis Plaintiffs joined Vail and Yatrakis in their action in order to defeat diversity jurisdiction. *Id.*

The Defendants also alleged original jurisdiction pursuant to 28 U.S.C. § 1331,[5] the statutory provision on federal question jurisdiction. The Defendants alleged the Plaintiffs' claim is preempted by the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1).[6] They alleged preemption of

---

3. Section 1441 provides in relevant part:

§ 1441. **Actions removable generally**
(a) [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....
(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or right laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
28 U.S.C. § 1441.

4. Section 1332 provides in relevant part:
**Diversity of citizenship; amount in controversy; costs**
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, ... and is between—
(1) citizens of different states;
\* \* \* \* \* \*
(c) For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business....
28 U.S.C. § 1332.

5. Section 1331 provides in relevant part:
**Federal question**
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C. § 1331.

6. Section 1305 provides in relevant part:
§ 1305 **Federal Preemption**
(a) **Preemption**
(1) [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....
49 U.S.C.App. § 1305(a).

the state claims of the Plaintiffs creates exclusive jurisdiction or at least original jurisdiction by this court. Notice of Removal, ¶ 20. The Defendants also alleged the claims of the Plaintiffs arise under and are controlled by the Multilateral Convention of the Unification for Certain Rules Relating to International Transportation by Air (the "Warsaw Convention"), 49 U.S.C. App. § 1502 note. Notice of Removal, ¶¶ 22–23.

Because the action commenced by the 19 December 1989 Complaint involved the same parties as the present action and because the two actions partly concerned identical issues surrounding the crash of Pan Flight # 103 and the security of Pan Am passengers, the present action was transferred to the Eastern District of New York on 15 May 1990 *sua sponte. See* 15 May 1990 Order. After transfer, the case was assigned to Judge Platt and the Plaintiffs brought their Motion for Remand before that court. The Parties briefed the question of remand, but Judge Platt did not decide it. Instead, he returned the action to the District of New Jersey for disposition of whether subject matter jurisdiction existed for removal of the action to federal court. *See* 12 September 1990 Order.

On 13 September 1990, counsel for the Parties appeared before this court for a conference. At the conclusion of this conference, the Parties were directed to brief whether subject matter jurisdiction existed for the Plaintiffs' claims and whether the transfer of the action to the Eastern District of New York, the return of the action to the District of New Jersey and venue in this District were appropriate.

The Parties submitted for consideration on the transfer question the Transfer Brief and Transfer Opposition. They submitted for consideration of the removal question the Remand Brief and Remand Opposition originally submitted to Chief Judge Platt.

In arguing against subject matter jurisdiction, the Plaintiffs contend diversity jurisdiction is lacking because Defendants Pan Am and PAWA are citizens of Delaware and New York, Plaintiff Vail is a citizen of Delaware and Plaintiff Yatrakis is a citizen of New York. Transfer Opposition at 4–5; Remand Brief at 11. The Plaintiffs also assert the action is not removable under the Warsaw Convention because it does not arise under the terms of that treaty. Transfer Opposition at 17–18; Remand Brief at 22–23. In addition, they assert the absence of federal question jurisdiction because they assert only state law causes of action and because, they contend, a private cause of action must be available under a federal preemptive statute in order for that federal statute to form the basis for removal. Transfer Opposition at 7–17; Remand Brief at 14–22. They also contend no such private cause of action exists under the Federal Aviation Act. *Id.*

The Defendants do not dispute in the Remand Opposition and Transfer Brief the Plaintiffs' assertions regarding the lack of removal jurisdiction based on diversity of citizenship and the Warsaw Convention. Instead, they assert federal question jurisdiction under the preemption provision of the Federal Aviation Act. The Defendants contend the absence of a private cause of action under the Federal Aviation Act does not defeat jurisdiction because it is not necessary for a preemptive federal statute to provide a private cause of action in order to form the basis for removal jurisdiction. Remand Opposition at 24–28.

*Discussion*

A. Background — the Regulatory Scheme of the Federal Aviation Act

In 1938, Congress promulgated the Civil Aeronautics Act of 1938, Ch. 601, 52 Stat. 973 (1938). Under the Civil Aeronautics Act, the Civil Aeronautics Authority, renamed in 1940 to the Civil Aeronautics Board (the "CAB"), was created and vested with the authority to regulate commercial aviation. Section 411 of the Civil Aeronautics Act (now codified at 49 U.S.C.App. § 1381) gave the CAB the power to determine if a carrier engaged in unfair or deceptive practices or unfair competition. *Id.* at 1003.

The Federal Aviation Act of 1958, Pub.L. No. 85–726, 72 Stat. 731 (1958) (the "Avia-

tion Act") created the Federal Aviation Agency and reenacted section 411.

The Airline Deregulation Act of 1978, Pub.L. No. 95–504, 92 Stat. 1705 (1978) (the "Deregulation Act") retained section 411 and added section 105 (now codified at 49 U.S.C.App. § 1305), the federal preemption provision. *Id.* at 1707–08. The House Committee on Public Works and Transportation intended section 105 to "prevent conflicts and inconsistent regulations by providing that when a carrier operates under authority granted pursuant to title IV of the Federal Aviation Act, no State may regulate that carrier's routes, rates or services." H.R.Rep. No. 1211 at 16; 1978 U.S.Code Cong. & Admin. News 3737 at 3752. The Deregulation Act also contained "sunset provisions" which terminated some authority of the CAB and transferred some authority of the CAB to the Department of Transportation (the "DOT"). Under the Deregulation Act, the CAB retained its authority under section 411.

Finally, the Civil Aeronautics Board Sunset Act of 1984, Pub.L. No. 98–443, 98 Stat. 1703 (1984) (the "Sunset Act") terminated or transferred the remaining authority and functions of the CAB and provided for its demise. It also provided for the transfer of the authority of the CAB neither terminated nor transferred by 1 January 1985, including its authority under section 411, to the DOT. The Sunset Act retained in substance the content of sections 411 and 105 which are now codified at 49 U.S.C.App. §§ 1381 [7] and 1305, respectively.

Besides section 411, which permits the DOT to take action to halt deceptive practices by air carriers, section 404(a) is also relevant to this action. Section 404(a) makes it the duty of air carriers to provide "safe and adequate service, equipment, and facilities." 49 U.S.C.App. § 1374(a).[8]

The Aviation Act contains a judicial enforcement provision which sets forth which parties may initiate actions in federal court to enforce the Act's provisions. 49 U.S.C. App. § 1487(a).[9] Under this section, the Board or Secretary of Transportation or their agents may sue to enforce any provision of the Aviation Act, the Attorney General may sue to enforce section 1514 only, and "any party in interest" may sue to enforce section 1371(a) only, requiring air carriers to be certified as a condition for operation.[10] The Aviation Act therefore

---

7. Section 1381 provides in relevant part:

 **Methods of competition; incorporation by reference**

 (a) The Board may, upon its own initiative or upon complaint by any carrier, foreign air carrier, or ticket agent, if it considers that such action by it would be in the interest of the public, investigate and determine whether any air carrier, foreign air carrier, or ticket agent has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof. If the Board shall find, after notice and hearing, that such air carrier, foreign air carrier, or ticket agent is engaged in such unfair or deceptive practices or unfair methods of competition, it shall order such air carrier, foreign air carrier, or ticket agent to cease and desist from such practices or methods of competition.
 49 U.S.C.App. § 1381(a).

8. Effective 1 January 1983, the Deregulation Act repealed all of former section 404 of the Act, leaving intact the sole requirement that air carriers "provide safe and adequate service." Pub.L. No. 95–504, 92 Stat. 1705, 1744 (codified at 49 U.S.C.App. § 1551(a)(2)(B) (1982)).

9. Section 1487(a) provides in relevant part:

 If any person violates any provision of this Chapter, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this chapter, the Board or Secretary of Transportation or, as the case may be, their duly authorized agents, or, in the case of a violation of section 1514 of this title, the Attorney General, or, in the case of a violation of section 1371(a) of this title, any party in interest, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order, term, condition, or limitation; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers, agents, employees, and representatives from further violation of such provision of this chapter or of such rule, regulation, requirement, order, term, condition or limitation, and requiring their obedience thereto.
 49 U.S.C.App. § 1487(a).

10. Section 1371 provides in relevant part:

 **1371. Certificate of public convenience and necessity**

only arguably provides an express cause of action to private parties (the term "private party in interest" is not defined by the Aviation Act) under section 1371(a) and not under sections 1381 or 1374(a).

With respect to whether an implied right of action exists under sections 411 or 404(a) of the Aviation Act, the Third Circuit has found no implied private cause of action under section 1381. *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 338–40 (3d Cir.1975). *Polansky* involved an action by members of a European tour sponsored by the defendant who were allegedly furnished inferior ground accommodations. In determining whether section 1381 provided a private remedy, the court considered the four factors of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): (1) whether the statute was designed to protect a class of persons into which the plaintiff falls from the harm the plaintiff has suffered, (2) whether there is any indication of legislative intent to create or deny a private remedy, (3) whether implication of a private remedy would be consistent with the purposes of the legislative scheme, and (4) whether the cause of action is one traditionally relegated to state law such that inference of a federal cause of action would be inappropriate. *Polansky*, 523 F.2d at 334.

In concluding no private remedy existed under section 1381, the *Polansky* court noted no private cause of action had ever been implied from section 1381 and attributed this fact to dicta in *Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). In *Pan Am World Airways*, the Supreme Court described section 1381 as not an "embrac[e of] a remedy for private wrongs, but only a means of vindicating the public interest." *Pan Am World Airways*, 371 U.S. at 306, 83 S.Ct. at 483. The *Polansky* court then held:

> Through [this] regulatory scheme ..., the CAB is given control over all facets of one particular industry. The agency

is directed to weigh the "interest of the public" in determining what is an unfair practice under § 1381. The considerable discretion required in weighing the public interest can best be exercised by an agency knowledgeable in all aspects of the regulated industry. To imply a private remedy from § 1381 could undercut that discretion....

*Polansky*, 523 F.2d at 339. The court was additionally persuaded to find no implied private remedy under section 1381 by the fact that the statute designated a specific means of enforcement. *Id.* at 339 n. 23.

While this Circuit has not addressed whether a private cause of action may be implied under section 1374(a), other Circuits addressing the question have applied the four factors of *Cort v. Ash* to find no implied private remedy. *See Anderson v. USAir, Inc.*, 818 F.2d 49 (D.C.Cir.1987); *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408 (9th Cir.1984); *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). These cases based their holdings on the fact that the Aviation Act provides an enforcement scheme in sections 1471 and 1487, among others, and that "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Anderson*, 818 F.2d at 55 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)). *See also Diefenthal*, 681 F.2d at 1049 ("When Congress has established a detailed enforcement scheme, which expressly provides a private right of action for violations of specific provisions, that is a strong indication that Congress did not intend to provide private litigants with a means of redressing violations of other sections of the Act.").

**B. Removal**

 Section 1441 of Title 28 provides that in order for an action to be removed to federal court it must have been possible for

---

**(a) Essentiality**
No air carrier shall engage in any air transportation unless there is in force a certificate

issued by the Board authorizing such air carrier to engage in such transportation.

it to have been brought there in the first instance. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In the absence of diversity jurisdiction, federal question jurisdiction must be established in the manner required by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only if a federal cause of action is presented on the face of the properly pleaded complaint. *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 113 (3d Cir.1990). Thus, the plaintiff is the "master of the claim" in that he or she may avoid federal jurisdiction by pleading state law causes of action only. *Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429; *Allstate Insurance Co. v. 65 Security Plan,* 879 F.2d 90, 93 (3d Cir.1989). As noted recently by the Third Circuit: "The well pleaded complaint rule is alive and well...." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co.,* 858 F.2d 936, 941 (3d Cir.1988).

 A case may not be removed to federal court on the basis of a federal defense to a state law cause of action. *Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. at 2430. This rule exists because while "such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983) (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Federal preemption is ordinarily asserted as a defense to the allegations of a complaint and therefore does not usually form the basis for removal. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58,

63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Allstate Insurance Co.,* 879 F.2d at 93. "State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them...." *Railway Labor Executives Ass'n,* 858 F.2d at 942.

 An "independent corollary" to the well-pleaded complaint rule is the complete preemption doctrine. *Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. at 2430; *Allstate Insurance Co.,* 879 F.2d at 93. Under this doctrine, the preemptive force of a federal statute can be "so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Krashna,* 895 F.2d at 113 (quoting *Metropolitan Life Ins.,* 481 U.S. at 65, 107 S.Ct. at 1547). Thus, any complaint "raising 'this select group of claims is necessarily federal in character.' " *Railway Labor Executives Ass'n,* 858 F.2d at 939 (quoting *Taylor,* 481 U.S. at 63–64, 107 S.Ct. at 1546–1547). Such state law claims which have acquired a "federal character" are removable to federal court. *Taylor,* 481 U.S. at 63–64, 107 S.Ct. at 1546–1547; *Krashna,* 895 F.2d at 114.

The complete preemption doctrine has been most frequently applied to state law actions which fell within and which were preempted by section 301[11] of the Labor Management Relations Act (the "LMRA"). *Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. at 2430. It has been applied in this context as the logical extension of Supreme Court cases emphasizing uniformity in the law of labor contract interpretation and federal law supremacy furthering the LMRA's goal of industrial peace. *Teamsters Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.,* 369 U.S 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962). One such decision was *Textile Workers Union v. Lincoln Mills of Alabama,* 353

---

11. Section 301 provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought

in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in which the Court held that federal common law governs actions brought in federal court involving disputes over a collective bargaining agreement (a "CBA"). *Id.* at 451–56, 77 S.Ct. at 915–18. Other such decisions extended jurisdiction over section 301 actions to states courts, *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), and held that federal law governs state court actions brought under state law to adjudicate a dispute under a CBA, because "substantive principles of federal labor law must be paramount in the area covered by the [LMRA]." *Lucas Flour Co.*, 369 U.S. at 103, 82 S.Ct. at 576. The *Lucas Flour* Court reasoned that "[o]nce the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation." *Id.* at 103–04, 82 S.Ct. at 576–77.

Finally, the Court ruled to allow removal of such state court actions under what was to become known as the "complete preemption doctrine." *Avco Corp. v. Aero Lodge No. 735, etc.*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126, *reh'g denied*, 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968). *Avco* involved a suit to enjoin a union from striking. Because the Supreme Court found the heart of the dispute to be the "no-strike" clause in the CBA, it found the case fell within section 301 of the LMRA. *Id.* at

558, 88 S.Ct. at 1236. The Court reiterated that disputes under section 301 are at all times governed by federal law even when brought in state court and state law cannot provide an independent source of rights in such cases. *Id.* at 559–60, 88 S.Ct. at 1236–37. The Court held the case therefore arose under the laws of the United States within the meaning of the removal statute. *Id.* at 560, 88 S.Ct. at 1237.

In *Taylor*, the court considered the question of whether the *Avco* doctrine of complete preemption should be extended beyond the context of section 301 of the LMRA. *Taylor*, 481 U.S. at 64–65, 107 S.Ct. at 1546–1547. *Taylor* involved the propriety of the removal of a state law claim which both arose under section 502(a) of ERISA (now codified at 29 U.S.C. § 1132(a)) and which related to an employee benefit plan in the sense intended by ERISA's preemption provision, 29 U.S.C. § 1144(a).[12] *Id.* at 58, 107 S.Ct. at 1543.

The Court noted in *Taylor* the general principle that federal preemption was ordinarily a federal defense and thus did not usually form a basis for removal jurisdiction. *Id.* at 63–64, 107 S.Ct. at 1546–1547. The Court then raised the question of "whether or not the *Avco* principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § 502(a)(1)(B) as an action arising under federal law." *Id.* at 64, 107 S.Ct. at 1547.[13] The Court noted: "Even with a provision such as

---

12. Section 1144 provides in relevant part:
 **(a) Supersedure; effective date**
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
 **(b) Construction and application**
 * * * * * *
 (2)(A) Except as provided in subparagraph (b), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
 29 U.S.C. § 1144.

13. Section 502 is codified at 29 U.S.C. § 1132 and provides in relevant part:
 **§ 1132 Civil Enforcement**

**(a) Persons empowered to bring a civil action**
A civil action may be brought—
 **(1)** by a participant or beneficiary—
 * * * * * *
 **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

 * * * * * *

**(f) Amount in controversy; citizenship of parties**
 The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.
 29 U.S.C. § 1132.

§ 502(a)(1)(B) that lies at the heart of a statute with the unique pre-emptive force of ERISA, however, we would be reluctant to find that *extraordinary* pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547 (emphasis added, citation omitted).

The Court extended the complete pre-emption doctrine to claims falling under this ERISA section because the language of the jurisdictional subsection of ERISA's civil enforcement provision, 29 U.S.C. § 1132(f), closely paralleled that of the civil enforcement provision of the LMRA. *Id.* at 65, 107 S.Ct. at 1547. Most importantly, the Court found the legislative history of ERISA's civil enforcement provisions indicated Congress *intended* to endow those provisions with the preemptive power of section 301 of the LMRA. *Id.* at 65–66, 107 S.Ct. at 1547–48. It quoted from the Conference Report on ERISA describing the civil enforcement provisions which expressly provided for complete preemption: "All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947." *Id.* at 65–66, 107 S.Ct. at 1547–1548 (quoting H.R.Conf.Rep. No. 93–1280 (1974), U.S.Code Cong. & Admin.News 1974, p. 4639). The Court concluded: "No more specific reference to the *Avco* rule can be expected and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." *Id.*

This Circuit applied the analysis of *Taylor* in finding the complete preemption doctrine did not apply to create removal jurisdiction of state law claims preempted by the Railway Labor Act (the "RLA"). *Railway Labor Executives Ass'n,* 858 F.2d at 936. In *Railway Labor Executives Ass'n,* the plaintiffs appealed the district court's denial of their motion for remand of their state law claim, which had been removed under the theory that federal jurisdiction existed by virtue of federal preemption under the RLA. *Id.* They also appealed the decision of the district court dismissing their claim on the ground that the only proper forum was arbitration and that the federal and state court consequently lacked jurisdiction. *Id.* The Circuit found removal jurisdiction for the plaintiffs' claim did not exist under the complete preemption doctrine and held the district court should have first addressed the removal issue and remanded the claim to state court, leaving the issue of preemption for the state court. *Id.* at 939.

The analysis employed by the Circuit in *Railway Labor Executives Ass'n* to find the complete preemption doctrine inapplicable followed that used by the Supreme Court in *Taylor.* The Circuit reiterated the well-pleaded complaint rule requiring a federal cause of action to appear on the face of the complaint and the principle that federal preemption is ordinarily a federal defense which does not constitute the basis for federal court jurisdiction. *Id.* at 939. It then reviewed the complete preemption analysis employed by the Supreme Court in *Taylor* and *Franchise Tax Board,* characterizing those Supreme Court holdings as requiring under the complete preemption doctrine that the state law claims fall within the scope of a civil enforcement provision and that there exist clear indication of Congressional intent to create removal jurisdiction. *Id.*

The Circuit then held that "[i]n order to determine whether [the federal court] possesses [the] authority to recharacterize [a state law claim as a claim arising under a federal statute], the federal court must first ask whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Id.* at 942. It added: "[E]ven if there is a civil enforcement provision and the plaintiff's state claim falls within it, the federal court must further inquire whether there is a clear indication of a Congressional inten-

tion to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* The Circuit concluded: "If there is no such intent, the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand." *Id.* Because the Circuit found the RLA contained no civil enforcement provision and no indication of Congressional intent to create removal jurisdiction, it ordered the district court to remand the case to state court. *Id.* at 943–44.

Other recent Third Circuit cases have employed this complete preemption analysis in the context of section 301 of the LMRA and section 502 of ERISA. In *Krashna,* the Circuit noted the two requirements which must be met in order for a state law claim to be completely preempted by a federal statute so as to provide removal jurisdiction: (1) the statute relied upon by the defendant as preemptive must contain a civil enforcement provision, and (2) there must be a clear indication of Congressional intent to create removal jurisdiction under the statute. *Krashna,* 895 F.2d at 114. The Circuit found the plaintiff's claim, which had been removed by the defendant to federal court, exceeded the scope of section 301 of the LMRA and ordered the district court to remand the case to state court. *Id.* at 115.

*Allstate Insurance Co.* involved the application of the complete preemption analysis in the context of section 502 of ERISA. After noting the two conditions for removal jurisdiction, the Circuit found the plaintiffs' claim did not fall within ERISA's civil enforcement provision and therefore was not susceptible of removal. 879 F.2d at 93–94. It ordered the district court to remand the case to state court, stating: "The plaintiff has the right to insist upon litigating its state-law claims in the [state court]. [The plaintiff's] right to proceed in that tribunal includes the right to have the [defendant's] preemption defense decided there." *Id.* at 94.

Finally, principles of complete preemption were applied to grant a plaintiff's motion to remand its state law action for lack of removal jurisdiction under section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (the "Williams Act"). *Glass Molders Pottery, etc. v. Wickes Cos.,* 707 F.Supp. 174 (D.N.J.1989). The court noted that while the Williams Act provided an implied private cause of action for shareholders, it created no federal cause of action vindicating the same interests sought to be vindicated in the plaintiff's state cause of action. *Id.* at 178. The court also stated it was "[not] aware of any clear indicia in the Williams Act of Congressional intent to permit removal of actions such as asserted here." *Id.*

■■■ The Plaintiff's Complaint and Amended Complaint in the instant case do not allege any basis for federal jurisdiction. They present no basis for finding diversity jurisdiction. As noted above, the Complaint and Amended Complaint allege Vail is a resident of Delaware and Yatrakis is a resident of New York. Additionally, Vail certified she lives, works, is registered to vote and maintains a bank account in Delaware. *See* Vail Amended Cert. Yatrakis certified he lives, maintains a business, and is registered to vote in New York. An individual is the citizen of the state in which he or she is domiciled. *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *Liakakos v. CIGNA Corp.,* 704 F.Supp. 583, 586 (E.D.Pa.1988). Domicile is the individual's permanent home "to which he has the intention of returning whenever he is absent therefrom." *Michelson v. Exxon Research and Engineering Co.,* 578 F.Supp. 289, 290 (W.D.Pa.), *aff'd,* 745 F.2d 47 (3d Cir.1984). Vail and Yatrakis appear to be domiciled in Delaware and New York, respectively, and therefore appear to be citizens of those respective states.

Because Pan Am and PAWA are citizens of Delaware and New York, complete diversity is not present among the Parties as is required by section 1332(a). Nor does federal question jurisdiction based on the Warsaw Convention exist under the well-

pleaded complaint rule, given that the Plaintiffs have not alleged their claims arise under the Warsaw Convention in their Complaint or Amended Complaint. Moreover, the Defendants have not disputed the assertion of the Plaintiffs that neither diversity jurisdiction nor federal question jurisdiction exists under the Warsaw Convention.

■■■ The Complaint and Amended Complaint of the Plaintiffs rely exclusively on state law causes of action. They do not on their face allege any basis for federal jurisdiction. Thus, under the well-pleaded complaint rule, the Complaint and Amended Complaint do not on their face permit removal to federal court. Removal jurisdiction would therefore exist only if the Plaintiffs' state law claims were rendered federal in nature under the complete preemption doctrine.

The Defendants claim the preemption provision of the Aviation Act, 49 U.S.C. App. § 1305(a), creates federal jurisdiction which permits removal. However, that the Aviation Act contains a provision preempting claims under state law does not under the principles of complete preemption described above create removal jurisdiction. The preemption provision alone merely creates a federal defense to the Plaintiffs' claims under state law. In order for the Plaintiffs' state law claims to be rendered federal in nature, the Aviation Act must contain a civil enforcement provision and such provision must have been intended by Congress to create a basis for removal.

The requisite conditions for complete preemption are not found in the Aviation Act. As noted above, the Aviation Act only arguably contains a civil enforcement provision (for "any party in interest") under 49 U.S.C.App. § 1487 for claims under 49 U.S.C.App. § 1371, which relates to the certification of air carriers and which therefore is not relevant to the Plaintiffs' claims. Nor does it appear that an implied private remedy under a federal statute meets the first condition for federal preemption articulated in *Railway Labor Executives* and *Allstate*

*Insurance Co.*, that the federal statute contain a civil enforcement provision. *Glass Molders,* 707 F.Supp. at 178. However, even if an implied private remedy were sufficient, no such remedy has been found under the sections of the Aviation Act most analogous to the Plaintiffs' claims, 49 U.S.C.App. § 1381, relating to deceptive practices or unfair competition by air carriers, and 49 U.S.C.App. § 1374(a), relating to the responsibility of air carriers for the safety of passengers. Nor is there any indication in the legislative histories of § 1381 and § 1374(a) of Congressional intent to create removal jurisdiction.

The Aviation Act therefore does not contain the "extraordinary" preemptive force necessary to render the Plaintiffs' state claims federal in nature and removal proper. The Plaintiffs, as "masters of their claim," have successfully pleaded state law claims and are entitled to litigate their claims in state court, the forum of their choice. While their claims may ultimately prove to be preempted by section 1305 of Title 49, the ordinary preemption issue is most appropriately decided by the state court and is not addressed here. *See Franchise Tax Board,* 463 U.S. at 3–4, 103 S.Ct. at 2843–2844 (given inapplicability of complete preemption doctrine, lower federal courts had no jurisdiction to decide whether state claims were preempted by ERISA); *Krashna,* 895 F.2d at 115 n. 7 ("We need not consider the viability of this state claim nor whether ordinary preemption operates against it. These are matters for the state court."); *Railway Labor Executives,* 858 F.2d at 939.

Removal jurisdiction is not appropriate in this case. The Plaintiffs' Motion for Remand to the New Jersey Superior Court is granted. Accordingly, the transfer issue is moot.[14]

*Conclusion*

The Plaintiffs' action is remanded to the Superior Court of New Jersey, Law Divi-

---

**14.** It is noted, however, that if removal jurisdiction were appropriate in this case, the Plaintiffs'

action would be transferred to the Eastern District of New York under 28 U.S.C. § 1404(a).

sion, Middlesex County. An appropriate order accompanies this opinion.